Argued and submitted December 15, 1995, remanded with instructions in part;
otherwise affirmed May 15, 1996

## In the Matter of the Marriage of

### Shirley McDONOUGH,
*Appellant,*

*and*

### David R. McDONOUGH,
*Respondent.*

### (93-09-385; CA A83857)

917 P2d 36

Gregory B. Soriano argued the cause for appellant. On the briefs was Kathleen Kelly Moore.

John H. Heald argued the cause for respondent. With him on the brief was Smith, Freed, Heald & Chock, P.C.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Wife appeals from a dissolution judgment, assigning error to the trial court's failure to award permanent spousal support and to the trial court's calculation and disposition of marital assets. We review *de novo*, ORS 107.405, ORS 19.125(3), and remand for modification of the judgment.

The material facts are as follows: Wife and husband, both 53, separated in September 1993, after nearly 18 years of marriage. When the parties were married in 1975, wife had completed high school through the 11th grade; she received her GED in 1983. Wife worked as a cook and waitress for the first two years of the marriage, then, in 1977, began working full-time as a sewing operator at the White Stag company in Portland. In 1982, while working as a sewing operator, wife sustained a work-related back injury, which required multiple surgeries and which ultimately prevented her from returning to work on a full-time basis. Wife has not been employed since 1982, although she has sold Avon products and herbal pills, which generated some income.[1]

Husband, who has a bachelor's degree in business, was employed as a warehouse manager for a General Foods cold storage warehouse between 1975 and 1987. When the warehouse facility was sold to Agripac in 1987, husband continued in his managerial position until the spring of 1992, when he was laid off. In the fall of 1992, husband purchased a janitorial service franchise, which he continued to own, operate, and manage at the time of trial.

At trial, the court found that wife's monthly income consisted of $436 in Social Security disability benefits and $500 from an irrevocable living trust established with an inheritance from husband's family. With regard to husband, the court found that he earned $1,200 per month from his janitorial business and that he also received $500 each

---

[1] At trial, wife testified that she earned approximately $11,000 in gross sales from selling Avon products in 1993, but that her net earnings were only $200. Although wife offered no additional evidence to support her testimony, husband offered no evidence to refute it, and the trial court made no findings with regard to wife's earnings from her Avon sales.

month from the trust fund. Finally, the court found, both wife and husband would receive half of husband's retirement benefits from two former employers. Specifically, each party would receive $174 per month from General Foods beginning in May 1995, and $122 per month from Agripac beginning in May 2005. Wife's uncontested living expenses were $1,858 per month, and husband's uncontested monthly living expenses were $1,461. The trial court ordered husband to pay wife spousal support of $500 per month for eight years, until 2002, which corresponded with husband's 62nd birthday.

On appeal, wife makes two assignments of error. (1) The trial court erred in terminating spousal support when husband reached age 62. (2) The court's distribution of marital property is erroneous in that it is based on mathematical errors.

In setting the appropriate amount and duration of spousal support, the court is to award "such amount of money for such period of time as it may be just and equitable" for the supporting party to contribute. ORS 107.105(1)(d). The court is to consider, among other factors, the length of the marriage, the ages and health of the parties, each party's earning capacity considering his or her education, skills and work experience and the extent to which that capacity has been impaired by extended absence from the job market. ORS 107.105(1)(d)(A)-(G); *Ley and Ley*, 133 Or App 138, 141, 890 P2d 440 (1995).

In addition, the amount of the award should be reasonable and should enable the supported party to enjoy a standard of living that "will not be overly disproportionate to that enjoyed during the marriage to the extent that that is practicable." ORS 107.105(1)(d)(F); *Christensen and Christensen*, 123 Or App 412, 416, 859 P2d 1192 (1993). The duration of the award should further the goal of "ending the support-dependency relationship within a reasonable time if that can be accomplished without injustice or undue hardship." *Grove and Grove*, 280 Or 341, 353, 571 P2d 477, *mod* 280 Or 769, 572 P2d 1320 (1977); *Christensen*, 123 Or App at 416. Finally, the purpose is not to eliminate disparities in the parties' incomes or to enable one spouse to look to the other indefinitely for support if the dependent spouse can become

self-supporting at a reasonable level. *Ley*, 133 Or App at 141; *Christensen*, 123 Or App at 416.

■    In this case, husband owned and operated his own business, which, the trial court found, generated $1,200 in income for husband per month. Wife, on the other hand, was not working and had not been working for the 10 years before the trial; wife's monthly income consisted of the $459 she received in Social Security disability payments and $500 from the inheritance trust. Wife's nonworking status was due, in large part, to her physical disability, her level of education, her limited work experience, and her extended absence from the job market. Thus, given wife's circumstances, the trial court found,

> "with respect to earning capacity, that wife is presently unable to work in an eight-hour sit down job. She can do something to earn some money, the exact amount of which I don't know nor does the evidence establish."

Neither party disputes that a disparity exists between husband's and wife's present incomes and future earning capacities. The parties agree, in particular, that wife is unable to obtain full-time employment. The issue, thus, reduces to whether wife will require continued spousal support beyond husband's 62nd birthday. Wife maintains that the court incorrectly based the duration of spousal support on pure speculation as to husband's age of retirement and the effect of his retirement upon his income. We agree.

There is no evidence that husband intends to retire at age 62. In addition, there is no evidence regarding a reduction, or any change, in husband's income when he reaches his 62nd birthday. It appears, then, that the trial court made two erroneous assumptions: First, that husband would retire at age 62 and, second, that husband's income would be reduced at that time and affect his ability to continue to provide $500 in monthly support to wife. Consequently, there is no basis in this record for tying the termination of spousal support to some unsubstantiated anticipation of a reduction in husband's income on his 62nd birthday. *See Porter and Porter*, 115 Or App 583, 584, 839 P2d 275 (1992) ("The likelihood of eventual retirement is no reason to limit the duration of support now."); *Gagnepain and Gagnepain*, 113 Or App 56, 59,

831 P2d 67 (1992) (duration of spousal support not to be tied to supporting spouse's retirement where date and financial effect of retirement are not proven).

■     In determining the duration of spousal support in this case, we find several factors important. First, wife was 53 years old at the time of trial and had substantial health problems. Her work experience was both limited in scope and temporally remote. This case, therefore, is distinguishable from cases in which spousal support was limited in duration. *See, e.g., McLennan and McLennan*, 140 Or App 379, 384, 914 P2d 711 (1996) (limiting duration of spousal support to wife where wife was "relatively young," had "no health problems," and had a level of education and work experience that indicated her ability to become self-supporting eventually).

Wife's living expenses are $1,858 per month. Wife's monthly income, including spousal support, totals $1,610.[2] In addition, we conclude, based upon wife's education, work experience, physical limitations, and the trial court's findings, that wife is capable of earning $250 per month, either from her continued sales of Avon products or from a part-time, minimum wage position, or a combination thereof.

Because the record indicates no future events that would decrease wife's monthly income needs, we find her living expenses to be $1,858, indefinitely. We further find that, until 2005, wife's financial needs will be met with her monthly income of $1,610 (from benefits, spousal support, and her trust), combined with employment income of $250. In May 2005, however, when wife begins to receive $122 from husband's Agripac retirement plan, her financial needs should be reduced by that amount. Accordingly, wife is entitled to $500 monthly support until May 2005, and, $378 monthly support indefinitely thereafter.

---

[2] Wife's monthly income of $1,610 is based upon the following:

| | |
|---|---|
| Social Security disability payment | $ 436 |
| Trust fund | 500 |
| Spousal support | 500 |
| General Foods retirement benefits | 174 |
| TOTAL | $1,610 |

■     In her second assignment of error, wife claims that the trial court's order distributing the marital assets erroneously memorialized the court's intended disposition, as expressed in its prior oral ruling, and that that purported disparity should be corrected on appeal. Wife, however, failed to preserve that alleged error through any objection to the proposed form of judgment,[3] and it is not error apparent on the face of the record. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991). Accordingly, we will not consider it.

Remanded with instructions to enter modified judgment awarding wife spousal support of $500 per month from March 8, 1994 to May 2005 and $378 per month thereafter; otherwise affirmed. Costs to wife.

---

[3] Indeed, wife's counsel approved the supposedly erroneous form of judgment.