Argued and submitted September 30, 1996, remanded in part; otherwise affirmed
February 26, 1997

In the Matter of the Marriage of

Lauren RYKERT,
*Appellant,*

*and*

Thomas Marvin RYKERT,
*Respondent.*

(C94-2639DR; CA A89796)

934 P2d 519

David C. Gearing argued the cause for appellant. With him on the brief was Stahancyk, Gearing & Rackner, P.C.

Jack L. Kennedy argued the cause for respondent. With him on the brief were Susan E. Watts and Kennedy, King & Zimmer.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Wife appeals a dissolution judgment, challenging the trial court's award of spousal support, the disposition of marital property and the trial court's calculation of child support. We review *de novo*, ORS 19.125(3), and modify the judgment.

The parties had been married for 22 years at the time of the dissolution proceedings. Husband was 48 years old and wife was 45. They have three children, who were 20, 19 and 17 years old at the time of trial. Wife was awarded custody of the minor child. The oldest child lives with wife while attending college and the other child, who is also in college, lives with wife during school breaks.

Husband is a State Farm Insurance agent. He draws a commission on sales of insurance through his office, but he does not own the agency or its "book," which is the various insurance policies that are renewed at regular intervals. State Farm Insurance owns the agency and the "book." Husband reported earnings on his personal income tax returns for 1992 as $139,139, for 1993 as $165,901 and for 1994 as $198,559. The trial court found that his weighted average income was $178,000 per year.

Wife is attending college full time in pursuit of a degree in physical therapy. At the time of the proceedings, she expected to complete her studies and to be able to obtain employment by late 1997. Before the marriage, she worked a short time in the medical records department of a hospital. During most of the marriage, wife's primary role was as a homemaker. She did, however, assist husband at the agency during periods when he needed extra help. Her ability to help there was limited by her child-rearing responsibilities, especially early in the marriage. As a result of her involvement in husband's agency, she acquired a license to sell insurance. She also worked for a short time as a teacher's aide.

The court ordered husband to pay wife $4,500 per month for two years, beginning on May 1, 1995; $3,100 per month for three years; and $2,600 per month for three more years. In the property division, wife was awarded the family

home, an equalizing judgment of $13,323 and other assets totaling about $200,000. Husband was awarded his insurance agency, which was found to consist of a termination agreement with State Farm Insurance and the physical assets of the business, and other assets that totaled about $200,000.

Wife first argues that the court erred in not awarding her indefinite spousal support. We agree. As we recently explained in *Krutsinger and Krutsinger*, 140 Or App 215, 218, 914 P2d 1096 (1996):

> "In establishing the proper level of spousal support, we attempt to award 'such amount of money for such period of time as it may be just and equitable' for the supporting party to pay. ORS 107.105(1)(d). The amount and duration of support should be set 'on terms that are equitable between the parties,' taking into account both need and ability to pay, while furthering 'the goal of ending the support-dependency relationship within a reasonable time if that can be accomplished without injustice or undue hardship.' *Grove and Grove*, 280 Or 341, 353, 571 P2d 477, *mod* 280 Or 769, 572 P2d 1320 (1977); *Christensen and Christensen*, 123 Or App 412, 416, 859 P2d 1192 (1993)."

ORS 107.105(1)(d) sets out the criteria to be considered in determining the appropriate amount of a spousal support award. The statutory factors include the length of the marriage, the age and health of the parties, the contribution by one spouse to the training, education and earning power of the other, the earning capacity of both parties, the need for training or education to become self-supporting, the number and needs of dependants and the standard of living established during the marriage. ORS 107.105(1). Additionally, we consider the extent to which the earning capacity of a party is impaired because of an extended absence from the job market to attend to family needs. ORS 107.105(1)(d)(F); *Benson and Benson*, 146 Or App 364, 932 P2d 104 (1997). Our objective is to enable each party "to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible." ORS 107.105-(1)(d)(M).

After considering the pertinent factors, we conclude that, under all of the circumstances here, wife is entitled to

indefinite support. First, there is and will remain a substantial disparity in the parties' earning capacity. Husband is earning approximately $14,833 per month. Wife's current earning capacity as an insurance clerk is approximately $1,600 per month. The evidence indicates that upon completing her training as a physical therapist, she will immediately have an earning capacity of about $1,900 per month and within eight years could be earning up to $3,500 per month. Obviously, even under the best scenario for wife, a substantial disparity in the parties' earning capacity will continue to exist.

We have often stated that the purpose of providing spousal support is not to completely eliminate disparities in the parties' incomes, or to allow one spouse to look indefinitely to the other for support if the supported spouse can become self-sufficient at a reasonable level. *See, e.g.*, *McDonough and McDonough*, 141 Or App 116, 119-20, 917 P2d 36 (1996); *Ley and Ley*, 133 Or App 138, 142-43, 890 P2d 440 (1995). However, where one spouse has been absent from the job market for an extended period of time to perform the role of a homemaker, an objective of spousal support is to allow, as much as is practicable, the supported spouse to enjoy a standard of living not overly disproportionate to that enjoyed during the marriage. ORS 107.105(1)(d)(F) and (M); *McDonough*, 141 Or App at 119. That is especially so where the extended absence results in the supported party entering a profession far later than is usual and that absence makes it "likely that the party will never substantially recover from the loss of economic position[.]" ORS 107.105(1)(d)(F); *Benson*, 146 Or App at 367; *Cookson and Cookson*, 134 Or App 357, 361, 895 P2d 345 (1995). As discussed above, that is the case here.

In addition to the fact that wife's role in this marriage interfered with the development of her earning capacity, it also contributed to the development of husband's earning capacity. During this 22-year marriage, wife assumed most of the responsibility for caring for the parties' children and management of the household. As husband acknowledged, that allowed him to devote the major portion of his time and energy to the development of his business. Clearly,

husband was able to achieve an advantageous economic position due, at least in part, to wife's efforts.

Additionally, wife helped husband in his business in the early years of the marriage by soliciting business over the phone and packaging advertisement information for mailing to prospective clients. She also assisted husband periodically throughout the marriage at times when he needed extra clerical help. Wife eventually obtained an insurance license and began to provide quotes, meet with potential customers and write policies. She also undertook entertaining, which assisted husband in acquiring business. Based on all of the above considerations, we conclude that in addition to the eight years of spousal support ordered by the court, wife should receive indefinite spousal support of $1,500 per month.[1]

Wife also argues that the trial court erred in including as marital assets the proceeds of an inheritance that she received. The inheritance was in her name alone and consisted of life insurance and stock worth about $20,000 and jewelry appraised at $1,858.

■ An inheritance acquired during a marriage is presumed to be a marital asset. *Pierson and Pierson*, 294 Or 117, 122, 653 P2d 1258 (1982); *Leslie and Leslie*, 130 Or App 327, 330, 881 P2d 159 (1994). As with other property acquired during a marriage, there is a statutory rebuttable presumption of equal contribution and ownership. ORS 107.105(1)(f). However, that presumption may be rebutted by evidence that

> "the gift or inheritance was acquired by the recipient spouse free from any contribution of the other spouse or that the other spouse was not the object of the donor's intent." *Randle and Randle*, 125 Or App 166, 169, 865 P2d 401 (1993), *rev den* 318 Or 458 (1994). (Emphasis and citation omitted.)

---

[1] Wife asserts, as an alternative argument, that the trial court erred in not making a separate property award to wife based on husband's "enhanced earning capacity." Because we conclude that spousal support should be indefinite, we do not address that claim.

*See Jenks and Jenks*, 294 Or 236, 241, 656 P2d 286 (1982) (presumption may be overcome where the inheritance was acquired by one spouse "uninfluenced by the other spouse"); *Pierson*, 294 Or at 123 (presumption of equal contribution rebutted where the acquisition was by sole inheritance, after the parties separated, and unaffected by efforts of the other spouse). In addition, evidence concerning whether the asset was commingled with the family finances and the degree of control exerted over the asset by the parties is pertinent to whether the statutory presumption has been overcome. *Hering and Hering*, 84 Or App 360, 363, 733 P2d 956, *rev den* 303 Or 534 (1987).

■     In this case, wife received the inheritance from her mother in 1992, about one year before the parties separated for the last time. The inheritance was given to wife only. However, she testified that after receiving the bequest, she asked husband to invest the insurance proceeds portion of the inheritance.

> "[Husband], throughout the 20 years of our—22 years of our marriage has been the money manager in the home and I have trusted him explicitly with the managing of the money. He does an excellent job there. So when I received this from my mom, since I never handled the finances in our home, I asked him for assistance in how to take the money from my mom and put it into this mutual fund and utility stock."

Wife testified that she asked husband to place the investments in her name only. He invested in two different interest bearing money market accounts. No money has been drawn from either fund since then. Both parties agree that wife told husband she wanted to keep the funds in her name alone to "save for a rainy day." Husband, however, testified that although placing investments in wife's name only had not been their usual practice, he did not have any problem with doing so and that there had been no discussion that the assets were hers alone and not a family asset. He took her "rainy day" comment to mean that she wanted the asset to be accessible so that it could be used for a family emergency, rather than to use it to pay down the mortgage as he had suggested.

Based on the above circumstances, we conclude wife did not present sufficient evidence to overcome the statutory presumption of equal contribution as to the insurance proceeds portion of the inheritance. Although the funds were in wife's name alone, they were handled in a manner consistent with the parties' other assets. Wife did not manage or provide any direction as to how the funds were to be invested but delegated the authority to husband to manage these funds as he did with the parties' other assets. The trial court properly included the inheritance as a marital asset. *See Steele and Steele*, 92 Or App 532, 537, 759 P2d 304, *rev den* 307 Or 182 (1988) ("That the parties left the inherited bank accounts in wife's name only and allowed interest in those accounts to accumulate does not negate the conclusion that those funds became integrated into their common financial affairs.").

■ With respect to the jewelry that wife received as an inheritance, we conclude that wife did overcome the statutory presumption of equal contribution. Wife received the jewelry as an inheritance from her mother without husband's effort or contribution, and there is no indication in the record that these items have been commingled with the parties' finances in any way. *Krutsinger*, 140 Or App at 220. The trial court erred in including the jewelry as a marital asset. Accordingly, the property award should be modified to add $929 to the equalizing judgment awarded to wife.

■ Wife next argues that the trial court erred when it applied a 39 percent tax discount to husband's termination benefits while not applying a tax discount to the expected capital gain on the sale of the family home. In dividing marital property, the court may consider the tax consequences that the division may have on the parties. ORS 107.105(2). However, if the court is to make adjustments in a property division based on tax consequences, the court must be presented with evidence that specifically demonstrates "a reasonable and supportable basis for making an informed judgment" about a party's likely tax liabilities. *Alexander and Alexander*, 87 Or App 259, 261, 742 P2d 63 (1987). Where the amount of the tax consequence or the potential for tax liability is too speculative, the court will not take into account the possible effects of taxation in dividing property.

*Follansbee and Ackerman*, 115 Or App 39, 42, 836 P2d 763 (1992).

■        The trial court here concluded that the tax consequences of the sale of the parties' home were too speculative. The court explained:

> "The court finds there are too many variables to consider the potential tax consequences. The court is convinced wife intends to sell the family home. However, the court remains unconvinced regarding what wife will do about purchasing a new home. The court is unwilling to speculate about the potential value of wife's new residence or when she will purchase a new residence."

We agree with the trial court. The evidence about when wife would sell the home and how much would be paid for a replacement home is simply too uncertain to provide a reasonable and supportable basis for making an informed judgment about the tax consequences of a sale.

■        With respect to the tax discount that the court applied to husband's termination benefits, wife first claims that the trial court erred in deducting taxes from husband's termination benefits because the benefits are not part of a qualified retirement plan. However, ORS 107.105(2) does not limit consideration of tax consequences only to qualified retirement plans. Under appropriate circumstances, a trial court may consider the tax consequences of a party's receipt of assets such as husband's termination benefits.

Wife also asserts that the tax on the termination benefit is too speculative because there is no evidence that husband intends to retire in the near future. She also argues that, if a deduction for tax purposes is appropriate, the rate used by the trial court is too high. The termination benefits at issue here are based on a contract with State Farm that, if husband's contract is terminated, State Farm will pay him a sum, payable in monthly installments over a period of five years. The record shows that husband's termination benefits have vested and the parties stipulated that the benefits had a present value of $240,000 before taxes. Husband's expert testified that these benefits are fully taxable when received and that husband's current tax rate for federal and state taxes combined for the contract termination benefits is 39 percent.

This evidence provided the court a "reasonable and supportable basis for making an informed judgment" about his probable tax liability. The evidence presented by wife that the rate should be 35 percent concerned extended termination benefits that were not vested or valued at trial. We conclude that the trial court properly determined that 39 percent was the correct tax rate to apply to these termination benefits.

■      Finally, wife asserts that, in calculating the parties' incomes for purposes of determining child support, the trial court erred in charging her with potential earnings based on her potential income as an insurance clerk when, in fact, she was not so employed and instead was a full-time student. Husband responds that the evidence presented at trial showed that wife could earn $1,500 to $1,600 per month as a customer service representative in an insurance agency and that there was no evidence that wife could not work at least part time.

To determine the amount of child support under the Child Support Guidelines, the court first determines the "gross income" of each parent. OAR 137-50-330(1)(a). Gross income includes income from wages. OAR 137-50-340(1). The calculation of gross income is governed by OAR 137-50-360, which provides:

"(1)   If a parent is unemployed, employed on less than a full-time basis or there is no direct evidence of any income, child support shall be calculated based on a determination of potential income. For purposes of this determination, there shall be a rebuttable presumption that a parent can be gainfully employed on a full-time basis.

"(2)   Determination of potential income shall be made according to one of two methods, as appropriate:

"(a)   Determine employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, or prevailing job opportunities and earnings levels in the community; or

"(b)   Notwithstanding any other provision of this section, the amount of potential income attributed to a parent will not be less than full-time work (40 hours a week) at the current state minimum wage."

Under the above rule, if a parent is not employed or is employed part time, child support is calculated based on potential income. OAR 137-50-360(1). The determination of potential income begins with a rebuttable presumption that that parent can be gainfully employed on a full-time basis at at least the minimum wage. OAR 137-50-360(1); *Cress and Cress*, 119 Or App 197, 200, 850 P2d 383 (1993) (mother, a full-time student raising two children and working in a work study program that limited her earnings to $300 per month, rebutted presumption under OAR 137-50-360(1)); *Koch and Koch*, 110 Or App 497, 500, 823 P2d 442 (1992) (OAR 137-50-360(1) provides a "rebuttable presumption that every parent can be employed full-time at at least the minimum wage."). Here, the court apparently concluded that wife did not rebut that presumption because it determined that wife had the potential to earn $1,600 per month working full time as an insurance agent. Wife testified, however, that she was in school full time in pursuit of a degree in occupational therapy. She stated that she was in class all day and that on some days she also was required to participate in practicums outside of class. We conclude that wife has rebutted the presumption that she can be gainfully employed on a full-time basis.

Because the presumption was rebutted here, wife's potential income must be determined under OAR 137-50-360(2). Under that subsection, the determination of potential income "shall be made according to one of two methods, as appropriate[.]" It may be based on the considerations in subsection one: The parent's employment potential and probable earnings based on recent work history, occupational qualifications or the prevailing job opportunities and earning levels in the community, *or* it may be calculated by attributing to the parent the amount of income that would be earned if the parent worked 40 hours a week at minimum wage. OAR 137-50-360(2).

Here, the trial court did not calculate wife's potential income under subsection (2) because of its apparent determination that she had not overcome the presumption that she could work full time. Therefore, we remand to the trial court to determine wife's potential income under subsection (2) and to recalculate the child support award accordingly.

Remanded for entry of judgment awarding wife indefinite spousal support of $1,500 per month at the conclusion of the current spousal support award, for recalculation of the equalizing judgment, and for recalculation of child support; otherwise affirmed. Costs to wife.