Argued and submitted October 15, reversed and remanded in part; otherwise
affirmed December 17, 1997

In the Matter of the Marriage of

Glenn Lee MURPHY,
*Respondent,*

*and*

Bonnie Lou MURPHY,
*Appellant.*

(9601103CV; CA A96159)

950 P2d 377

Michael Ratliff argued the cause for appellant. With him on the brief was Parks & Ratliff.

Gary L. Hedlund waived appearance for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Wife appeals from a dissolution judgment awarding her spousal support only until she reaches 66 years of age. On *de novo* review, ORS 19.125(3), we conclude that wife is entitled to indefinite spousal support.

On January 8, 1997, the trial court entered a judgment dissolving the parties' 37-year marriage and awarding wife spousal support of $950 per month until she turns 66 years of age. Wife filed a notice of appeal from that judgment, and husband moved to modify the judgment because wife had obtained employment. The trial court entered a modified judgment reducing wife's spousal support to $500 per month until she turns 66 years of age. Wife filed an amended notice of appeal. The only issue is whether the trial court erred in terminating spousal support when wife turns 66 years of age.

Wife and husband were married in 1959. At that time, husband served in the United States Air Force (USAF), and wife worked as a secretary. Wife stopped working outside the home when she became pregnant with the first of the parties' two children, who are now adults, but she worked again in the computer field for some period in the 1970s. Although wife worked on and off when the parties needed extra money, she stopped working outside the home regularly in 1977 when husband, who had begun to suffer serious medical problems related to medical steroid use and exposure to Agent Orange during his tour of duty in Vietnam, retired from the USAF. When husband retired, he received full Veterans Administration (VA) disability benefits and Social Security benefits. At that time, husband's military pension benefits were fully vested. He waived those taxable pension benefits in exchange for a higher level of disability benefits, which are tax-free. The parties depended on husband's permanent disability benefits to support them both throughout their retirement.

Since 1977, husband has undergone six hip surgeries because of bone degeneration. Husband testified that it takes him about six months to a year to recover from each

surgery and that his activities are limited even after recovery. Wife testified she could not work outside the home consistently because she had to take care of husband, particularly after each surgery, and "most employers won't let you have 12 weeks off." Wife also managed the household and the family's financial affairs, including husband's complicated medical insurance coverage. During the later years of their marriage, the parties traveled and wife was an active bowler and golfer.

At the time of the dissolution trial, husband was receiving $3,263 per month in tax-free disability benefits from the VA and Social Security, and he was living alone in the parties' two-bedroom home, which has been modified to make it wheelchair accessible. Husband testified that during the parties' separation he had a full-time housekeeper and was taking regular hunting[1] and fishing trips with friends as well as paying wife $950 per month in temporary spousal support. Wife was unemployed, living in a one-bedroom apartment, and her only monthly income was temporary spousal support. She enrolled in vocational training courses with the goal of returning to full-time employment. She testified that she could no longer pursue her gardening hobby at the apartment, that she could afford only two short car trips to visit family members during the separation and that she relied on gifts of money from her adult children to golf occasionally.

The trial court awarded the family home to husband but ordered him to refinance it and pay an equalizing judgment of $23,000 to wife. The court divided the parties' personal property according to their agreement.[2] The trial court also awarded wife $950 per month spousal support "for a period not to exceed [wife's] 66th birthday," and ordered husband to maintain life insurance policies, with wife named as beneficiary, for "as long as [husband] has a spousal support obligation to [wife]." As explained above, the trial court subsequently modified the judgment to reduce spousal support

---

[1] Husband has a special permit that allows him to hunt from a jeep.

[2] The personal property was divided roughly equally and consisted only of household goods, two vans with handicap equipment and sporting goods.

to $500 per month for the same period. Wife does not challenge the trial court's reduction of her spousal support award but contends that the court erred in ordering support to terminate on her 66th birthday. She argues that, at that time, she will have retired with "little or no retirement [income], while [h]usband will continue to receive his disability award for the remainder of his life." Husband filed no brief in opposition.

██ When determining the amount and duration of support, we award an amount of spousal support for a period of time as it is "just and equitable" for the supporting party to pay. ORS 107.105(1)(d); *Rykert and Rykert*, 146 Or App 537, 540, 934 P2d 519 (1997). We take into account need and ability to pay, while furthering the goal of ending the support-dependency relationship within a reasonable time, if that can be accomplished without injustice or undue hardship. *Rykert*, 146 Or App at 540. We are to consider, among other factors, the length of the marriage, the age and physical health of the parties, the earning capacity of each party, the extent to which the present and future earning capacity of a party is impaired due to the party's extended absence from the job market to perform the role of homemaker, the net spendable income of the parties, and the standard of living established during the marriage. ORS 107.105(1)(d); *McDonough and McDonough*, 141 Or App 116, 119, 917 P2d 36 (1996).

██ In this case, the parties were married 37 years, and wife was 55 years old at the time of trial. She worked outside the home in the early years of the marriage, but she was absent from the job market for many years to perform the role of homemaker, to rear the parties' children and to care for husband. She has completed vocational training courses but only has been able to find work that pays $5.75 per hour for 37.5 hours per week, or approximately $650 net per month. Her employment does not provide a retirement plan. Her net monthly income, which consists of her wages and her spousal support of $500 per month, is $1,150. Her expenses are approximately $1,500 per month. A job training expert testified that, because of wife's age, it is unlikely that she will be able to find any but entry level jobs that provide few, if any, benefits.

Husband's monthly income at the time of trial was approximately $3,263 and is tax-free, consisting of Social Security benefits of $989 per month and disability benefits of $2,274 per month, which husband testified will decrease by approximately $100 per month as a result of the loss of the dependency credit. Husband's benefits will continue for the rest of his life, and he will receive a six-percent cost-of-living increase every year, which wife testified amounts to a yearly increase of approximately $200 per month. Husband testified that his expenses entirely consume his income and that during the separation he had to borrow money to pay $950 per month support, to pay his lawyer and to pay his medical bills. However, during the separation husband also was able to visit family members and take regular hunting and fishing trips with friends. Although husband testified that he has medical expenses that he has to pay, wife testified that if husband "applies for them right," his medical expenses would be paid fully by his three medical insurance providers.

■ In the dissolution of a lengthy marriage, the parties should be placed on a relatively "equal basis insofar as their income is concerned when they retire." *Randle and Randle,* 125 Or App 166, 170, 865 P2d 401 (1993), *rev den* 318 Or 458 (1994). If husband had not converted his military pension into disability benefits, wife would have been entitled to almost half of that pension as marital property. ORS 107.105(1)(f); *Mahaffey and Mahaffey,* 96 Or App 617, 620-21, 773 P2d 806 (1989). Furthermore, the parties agreed that husband's disability income would support them both through their retirement years.

The record does not indicate why the trial court decided that wife's spousal support should terminate when she reaches age 66. We might agree with that decision if there were evidence in the record that husband's income will decrease significantly when wife turns 66 or that wife will be self-supporting at that time. *See* ORS 107.105(1)(d)(D); *Rykert,* 146 Or App at 540 (we consider need and ability to pay in making support determination, and seek to end the dependency relationship). However, there is no evidence that husband's income will ever decrease. To the contrary, he will enjoy modest cost-of-living increases for the rest of his life. Neither is there evidence in the record suggesting that wife

will be able to become self-supporting by her 66th birthday, let alone be able to provide for her own retirement. In fact, as we have already explained, a job-training expert testified that it is unlikely that wife will be able to obtain any but entry level positions with few, if any, benefits. Under these circumstances, we conclude that wife is entitled to indefinite spousal support.

Reversed and remanded for entry of a modified judgment awarding wife indefinite spousal support of $500 per month; and otherwise affirmed. Costs to wife.