In the Matter of the Marriage of

Cheryl Ellen BUTLER,
*Respondent,*

*and*

Ralph Emerson BUTLER,
*Appellant.*

(96-DO-0136-AB; CA A101319)

981 P2d 389

Steven D. Bryant argued the cause for appellant. With him on the brief was Bryant, Emerson & Fitch.

Max Merrill argued the cause for respondent. With him on the brief was Merrill, O'Sullivan, MacRitchie, Petersen & Dixon, LLP.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Warren, P. J., retired.

## EDMONDS, P. J.

In this domestic relations case, husband appeals from a dissolution judgment and challenges certain property distribution and child support provisions. We review *de novo*, ORS 19.415(3), and affirm.

The parties were married in 1987. They separated in March 1996 and closed their joint bank accounts. Their marriage was dissolved in 1998. Wife is employed as a school teacher at $3,729 per month. Husband's income from working for the state and from other sources is $2,419 per month. At the time that the dissolution judgment was entered, their son was seven years old and their daughter was three years old. At trial, wife testified that she had received an inheritance of $87,000 from a great aunt who died in 1995. The evidence demonstrates that she received $50,000 of her inheritance in March 1996 before the parties separated, $20,000 in December 1996 and $17,000 in January 1997. At the time that the first installment was received, wife knew that she would be receiving additional installments. Wife testified:

"Q. And did the inheritance that you received from your aunt, did [husband] have anything to do with your receiving it? In other words, did he cause that in any way to occur?

"A. No.

"Q. Was he named at all in your aunt's will?

"A. No, he was not.

"Q. And has he had access to any of these funds since they were received by you?

"A. He had access to the first check; actually, he picked it up from the post office. And then we proceeded to pay off some of our debts with it before the separation.

"Q. Okay. Other than that then who has had access to it?

"A. I have had access to it."

The first installment of the inheritance was deposited into a joint account to which husband had access.[1]

---

[1] For example, husband testified that when he learned that $10,000 from this installment had not been placed in an account for him and wife, he "transferred

According to wife, approximately $8,000 from the first installment was used to pay off a joint credit card account and a joint car loan. Wife testified that, at that time, she desired to place some of the money in accounts for the children's educations. She testified:

"Q. * * * [D]id you jointly decide how much money to put in the accounts for the children?

"A. I discussed the situation with [husband]. I—we talked about the information that was given to me, that $100,000 would need to be set aside for the children for tuition by the time they became of age and what it would take presently to get to that point. And I discussed with him what he thought the amount should be and I also discussed it with the investment person.

"Q. And what was that amount?

"A. For [our son], since he is older, we initially said our ultimate goal was $25,000. And for [our daughter], since she is younger, it would be $15,000 to make it to the $100,000 education fund.

"Q. And [husband] agreed with that, did he not?

"A. Yes, he did.

"Q. And so did you set up those accounts and put the money in or did he?

"A. Yes, I did."[2]

At trial, husband also testified that he had agreed with wife that money should be set aside for the children. In addition to the funds allocated to the children and to pay joint credit card debt and a joint car loan, one of wife's exhibits accounts for the remainder of the inheritance as follows: (a) deposits into accounts solely held by wife; (b) a payment to wife's attorney; (c) a payment to the individual who conducted the child custody evaluation; (d) a payment to husband; (e) payments for home improvements; (f) payments for the purchase of computer and music systems; (g) payments

---

$10,000 from the joint checking [account] into a savings [account] at U.S. Bank solely in [his] name." According to wife, husband eventually paid this money back.

[2] Although it is unclear from the record, apparently the funds for the children's educational accounts did not come solely from the first installment of wife's inheritance.

for changing locks on the family residence; (h) payments for the purchase of pellets for the woodstove; (i) payments for child care expenses; (j) a payment to process an offer to purchase the family residence; and (k) a payment to wife's parents to help purchase a car.

The trial court awarded custody of the parties' children to wife. Husband was granted visitation and was ordered to pay $530 per month in child support "until further order of the Court or until said child shall attain the age of majority, die, marry, or otherwise become emancipated, whichever shall first occur, or so long as said child is attending school as defined in ORS 107.108." The trial court divided the parties' assets in approximately equal portions with the exception of wife's inherited money. As to the inherited money that appears to remain, the trial court awarded wife approximately $15,000 in investment management accounts and ordered that the children's accounts, which total approximately $43,000, be held in trust.

On appeal, husband makes three assignments of error. First, he asserts that the trial court erred in its property division because: (a) the trial court did not have authority under ORS 107.105(1)(g) to create the trust for the parties' children; (b) wife "failed to rebut the presumption of equal contribution to the acquisition of her inheritance"; and (c) even if wife had overcome the presumption of equal contribution, the trial court's property division is "not just and proper in all the circumstances." Second, husband argues that the trial court erred in failing to find that he had rebutted his presumed child support obligation in light of the trust that has been established for the children under ORS 107.105(1)(g). Third, he contends that the trial court "erred in its property division by effectively awarding wife three-fourths of the net reduction in the mortgage loan balance" after the parties separated.

■ We turn to husband's first assignment of error. Husband contends that the trial court did not have authority under ORS 107.105(1)(g) to establish the trust created in the judgment with a portion of wife's inheritance. However, during his closing argument at trial, husband's counsel said:

"But assuming—and I'm just assuming for the sake of argument that you lump it in and say that's all marital asset and the forty-two doesn't go to benefit either one of them. Then the other issue[ ] I think you have to consider is, one, we would ask that [it] be put in some kind of trust that cannot be used or borrowed against or anything like that."

Additionally, during the hearing at which the trial court issued its decision, husband's counsel said:

"What I heard them argue at the hearing was they didn't want my client to be any way involved in that money. If they are now saying that they will set up a trust—and I don't know who the trustees would be or anything along those lines. I guess you can order that by virtue of 107.105(1)(g)."

Because husband did not raise to the trial court the issue of its statutory authority to create the trust and invited it to create the trust he now challenges, he did not preserve the issue that he raises on appeal. ORAP 5.45(2). Accordingly, we reject his argument.

■■ Husband also challenges the property division by arguing that wife failed to rebut the presumption of equal contribution with regard to her inheritance. ORS 107.105 provides, in pertinent part:

"(1) Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

Marital property is " 'the real or personal property, or both, of either or both of the parties,' and constitutes the entire class of property subject to the dispositional authority of the court in a marital dissolution action." *Massee and Massee*, 328 Or 195, 206, 970 P2d 1203 (1999) (citing ORS

107.105(1)(f); *Pierson and Pierson*, 294 Or 117, 121, 653 P2d 1258 (1982)). Marital assets "include all the 'real or personal property, or both, acquired by either of the spouses, or both, during the marriage.'" *Id.* (citing ORS 107.105(1)(f); *Stice and Stice*, 308 Or 316, 325, 779 P2d 1020 (1989); *Pierson*, 294 Or at 121-22). An inheritance acquired during the marriage is a marital asset and is subject to the statutory presumption. *Pierson,* 294 Or at 121-23 (construing *former* ORS 107.105(1)(e) (1981) *renumbered as* ORS 107.105(1)(f)).

"In deciding whether the presumption of equal contribution is rebutted, the court first must determine the magnitude of each spouse's overall contribution to the acquisition of marital assets from evidence in the record. * * *

"Once the court has determined each spouse's overall contribution to the acquisition of marital assets, the court compares the respective contributions of the spouses. The ultimate question is whether the spouse seeking to rebut the presumption of equal contribution has proved, by a preponderance of the evidence, that the other spouse did not contribute equally to the acquisition of marital assets." *Massee,* 328 Or at 205.

If the marital asset is an inheritance, the presumption of equal contribution may be rebutted by evidence that

"the gift or inheritance was acquired by the recipient spouse free from any contribution of the other spouse or that the other spouse was not the object of the donor's intent." *Randle and Randle*, 125 Or App 166, 169, 865 P2d 401 (1993), *rev den* 318 Or 458 (1994) (emphasis omitted).

Additionally, in *Rykert and Rykert*, 146 Or App 537, 543, 934 P2d 519 (1997), we indicated that

"evidence concerning whether the asset was commingled with the family finances and *the degree of control* exerted over the asset by the parties is pertinent to whether the statutory presumption has been overcome." (Emphasis added.)

If a court decides that the presumption has been rebutted, it "distributes the marital assets without regard to any presumption, but in a manner that is just and proper in all the

circumstances, including the proven contributions of the parties to the acquisition of marital assets." *Massee*, 328 Or at 205.

■ Because all of the inheritance in this case was acquired before the dissolution, it is a marital asset subject to the statutory presumption of equal contribution. Wife testified that she acquired the entire inheritance free from any contributions of husband and that husband was not the object of her aunt's donative intent. However, there is also evidence that the first installment of $50,000 was deposited into a joint checking account and that husband wrote at least one check on the account to pay off a joint debt. With regard to that installment of the inheritance, we hold that wife has not rebutted the statutory presumption of equal contribution that arose at the time of the dissolution because those funds were commingled in the parties' joint account subsequent to their receipt.

■ With regard to the remainder of the inheritance, we hold that wife rebutted the presumption of equal contribution.[3] The parties separated and their joint accounts were closed in March 1996. The remaining two installments of the inheritance were received in December 1996 and January 1997. Thus, there was no commingling of that money with the money in the parties' joint accounts, and wife had sole access and control unlike with the first installment. To the extent that wife contributed to the parties' joint assets and obligations from the last two installments of her sole inheritance, she did so at her own instance. We conclude that the remaining inheritance is the sole property of wife because under the circumstances she has rebutted the presumption of equal contribution.

■ Husband's final challenge to the property division is that the property division is not just and proper under all of

---

[3] *See Pierson*, 294 Or at 122-23 (reasoning that acquisition of a sole inheritance after a separation is sufficient to rebut the presumption of equal contribution), *see also Rykert*, 146 Or App at 542-44 (holding that, although the wife had failed to rebut the statutory presumption regarding insurance proceeds that she inherited and that were handled by husband in a manner consistent with the couple's other assets, she had overcome the presumption with regard to jewelry that was received as part of the same inheritance and that had not become commingled with the couple's finances in any way).

the circumstances. At the core of husband's argument is the contention that, because he had received $50,000 from his mother in approximately 1992 and eventually used that money for home improvements and other family expenses,[4] and that because the parties had discussed possible uses for wife's inheritance before they separated, it is unfair to award wife an additional portion of her inheritance. Husband testified that he and wife had discussions about purchasing a pizza franchise or motor home with her inheritance. However, neither purchase materialized. Additionally, husband contends that, after receiving the first installment, wife had told him that she placed $10,000 in a joint account for them. Wife testified:

"Q. * * * [I]sn't it true that you told [husband] * * * that you were also setting aside $10,000 in an account for both you and he?

"A. Yes, I did.

"Q. And —.

"A. No, not for—I discussed it with the investment person because of our situation in our marriage and what was happening. And I asked for his suggestion on whether I should set it into a joint account or if I should set it into my name. And he suggested, along with my agreement, that I should put it just in my name."

Even if the parties had an agreement to establish a $10,000 investment account, and wife unilaterally decided to put that account in her name alone, it does not necessarily follow that, under all the circumstances, it would now be just and proper to divide the remainder of wife's inheritance equally. The loan from husband's mother in 1992 was used for joint purposes at a time when the parties were cohabiting. Once commingling occurs, we tend not to trace assets beyond that point because, presumably, both parties benefit equally from the commingling. Moreover, husband has received benefits from the first installment of wife's inheritance. Part of that installment was used to pay off joint debts, and, on the

---

[4] Apparently, husband borrowed $50,000 from his mother to help purchase a motorcycle business. Husband characterizes this loan as an inheritance/gift because, after he sold the business, the loan no longer needed to be repaid. At the time of trial, husband's mother was still alive.

sale of the family residence, husband will benefit from the monies from the inheritance and the loan that were used to make improvements.

■■ As to the contention that the parties' contemplation of the joint purchase of a pizza franchise or a motor home should weigh into the equation, we are not persuaded that those discussions ever culminated in a meeting of the minds of the parties on those subjects. Accordingly, we decline to give them any efficacy in deciding what is just and proper. In contrast, the parties mutually agreed that funds be set aside for the education of their children, and the trial court ordered that $43,000 from wife's inheritance be placed in trust for that purpose. For purposes of ORS 107.105(1)(f), we view that award as inuring to the benefit of both parties. Finally, we put the facts on the scale that wife was the sole beneficiary of her aunt's donative intent and that husband and wife both earn substantial incomes. Under all of the circumstances, we conclude that wife ought to enjoy the remainder of her inheritance without sharing it with husband. Accordingly, the trial court's property division was just and proper.

■ In his second assignment of error, husband contends that the trial court erred in failing to find that he had rebutted his presumed child support obligation in light of the trust that the trial court established. A parent's presumed child support obligation may be rebutted by a finding that the amount is "unjust or inappropriate in a particular case." ORS 25.280, *see* OAR 137-050-0330. Among the factors a court may consider in determining whether a child support obligation is unjust or inappropriate are the needs of the child. ORS 25.280; OAR 137-050-0330(2)(a)(G). Husband argues that the trust is an asset of the children that should be considered when determining their needs and that, in order to give effect to the trial court's and wife's intent that he benefit from the trust, his child support obligation should be offset. We disagree.

This case is similar to *Stephens and Stephens*, 125 Or App 25, 865 P2d 374 (1993). In that case, the parties had invested $52,000 in certificates of deposit (CDs) for the education of their children. The trial court awarded the CDs to the husband and the wife jointly and ordered them to hold

the CDs in trust for their children's educations. Additionally, the court ordered the husband to pay child support under the guidelines. The husband argued that the trust was "additional" support and that the trial court had no authority to order him to pay that "additional" amount. We held:

"The trust is simply a device to enforce the parties' agreement to use marital assets to educate their children. However, we cannot determine from the record if and when the trust assets will be used for their intended purpose. The dissolution judgment provides that father's support obligation will continue if the children attend school between the ages of 18 and 21. *See* ORS 107.108. If they attend school during that period, and the trust assets are used for their educational expenses, the support obligation of the parties may need to be reevaluated." *Stephens*, 125 Or App at 27-28.

In this case, the trial court ordered that approximately $43,000 be placed in trust for the future benefit of the parties' children. The money is to be used for the children's educational or medical expenses or other expenses for the children on which the parties mutually agree. At the time of the dissolution, the parties' children were seven and three years of age. The trial court also ordered that husband pay child support "until said child shall attain the age of majority, die, marry, or otherwise become emancipated, whichever shall first occur, or so long as said child is attending school as defined in ORS 107.108." Thus, if and when the children begin receiving benefits from the trust,[5] then husband's child support obligations could be subject to modification. *See* ORS 107.135.[6]

We turn now to husband's third assignment of error, in which he contends that the trial court intended to award

---

[5] At oral argument, husband raised the issue that the trust did not contain a provision disposing of the trust assets if the children do not attend college. That issue was not assigned as error. Accordingly, we decline to address it. ORAP 5.45(2). However, we note that ORS 107.105(1)(g)(C) provides, in part:

"Upon petition of a party or a person having an interest in the trust showing a change of circumstances warranting a change in the terms of the trust, the court shall have the power to make and direct reasonable modifications in its terms."

[6] ORS 107.135 is not operative until December 31, 2001. Or Laws 1997, ch 746, § 1. Oregon Laws 1997, chapter 746, section 116 operates in lieu of ORS 107.135 and is repealed on December 31, 2001.

wife one-half of the net reduction in the mortgage balance since April 1996 but effectively awarded her three-fourths. Even if the trial court erred, the effect of the error on the fairness of the overall property division is *de minimis* in light of the monies expended by wife from her inheritance for the mutual benefit of the parties and their children.

Affirmed.