Argued and submitted January 12, remanded March 6, reconsideration filed
April 10 allowed by opinion May 29, 1996
See 141 Or App 301, 917 P2d 75 (1996)

In the Matter of the Marriage of

Brenda M. ISHAM,
*Respondent,*

*and*

Gary Clayton ISHAM,
*Appellant.*

(L920795CV; CA A85316)

912 P2d 925

Russell Lipetzky argued the cause for appellant. With him on the brief was Saucy & Lipetzky, P.C.

Eric C. Larson argued the cause for respondent. With him on the brief were Sarah Geary Ottem and Gevurtz, Menashe, Larson & Yates, P.C.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Husband appeals from the portion of the judgment of dissolution of marriage that awarded wife the cattle ranch she inherited from her father while she and husband were married. ORS 107.105(1)(f). His sole assignment of error is that the trial court should have included all of the value of the ranch within its division of the parties' marital assets and that, therefore, he is entitled to be awarded one-half of its value. We review *de novo*, ORS 19.125(3), and modify the judgment.

Husband and wife were married 28 years. Both parties have worked throughout the marriage. Wife currently earns $1,446 per month, and husband earns $1,896 per month. They have two minor children who currently reside with husband. Wife is required by the judgment to pay $302 per month as child support. In 1982, wife inherited a two-thirds undivided interest in her family's ranch. The other one-third went to wife's uncle. The ranch has been in wife's father's family for 82 years. It consists of two parcels. The main parcel, known as the Morgan Ranch, has 1,122 acres and includes an older home that is in poor condition, corrals, and several outbuildings. The second parcel has 483.03 acres and is used entirely for grazing of cattle.

Wife is the only child of her father, who was divorced from wife's mother when wife was quite young. Although wife lived with her mother, she spent summers at her father's ranch, working with the cattle and doing other chores. In 1984, wife and husband entered into an agreement with wife's uncle to purchase his one-third interest for $60,000. They gave the uncle $15,000 as a down payment and executed a promissory note for the remaining $45,000. The parties borrowed $15,000 from wife's mother in order to make the down payment. The parties have used funds from their joint checking account to pay back both obligations. Part of those obligations remained unpaid at the time of trial.

At the time of wife's father's death, the parties lived in Gresham. After wife's father's death, they visited the ranch approximately two weekends a month. In 1988, wife moved to the ranch with the children. At that time, the ranch had approximately 70 head of cattle, which wife had also

inherited from her father. Although she worked full time at another job, she also worked on the ranch and raised cattle. In order to pay for the cattle operation, wife took out a personal line of credit with her bank. Both husband's and wife's paychecks, as well as the proceeds from the cattle operation, were deposited into the parties' joint checking account. Out of that account, wife paid household expenses, other ranch expenses, the promissory note, the loan owed to her mother and the personal credit line obligation.

Husband remained in Gresham in order to sell their home, and in July 1989, he moved to the ranch. The parties used the $17,000 in proceeds from the sale of their Gresham home to pay ranch expenses, to rewire the electrical lines in the ranch home, to pay the personal line of credit, and to buy livestock. From July 1989 to July 1992, husband and wife lived on the ranch together. They held full-time jobs off the ranch and performed ranch chores in their free time. The evidence indicates that wife spent significantly more time than husband performing ranch operations during this period of time.

At the time of the dissolution, the largest asset owned by the parties was the cattle ranch, which the trial court valued at $200,000. The ranch also had marketable timber valued at $108,349.[1] The only other significant asset was wife's retirement account with the Public Employes Retirement System (PERS), valued at $223,845.

At trial, wife conceded that the one-third interest in the ranch that she and husband bought from her uncle was part of the marital estate. However, she contended that the two-thirds interest in the property that she inherited from her father was a nonmarital asset or, alternatively, if a marital asset, that she had rebutted the presumption that the property was acquired through equal contribution by husband and wife. *See* ORS 107.105(1)(f). The trial court agreed with wife, finding that wife's father disliked husband and did not intend to benefit husband when he devised the

---

[1] The trial court found:

"The testimony and exhibits disclosed many of the fir trees are dead or dying. Insect damage is apparent. The court is of the opinion, unless harvested, the value of the timber will steadily decline."

two-thirds interest in the ranch to wife. Based on that evidence, the trial court concluded that two-thirds of the interest in the ranch and timber should be excluded from the assets to be divided among the parties. It then awarded wife the entire ranch, its timber and cattle, as well as two-thirds of the present value of her PERS retirement account, and required her to pay husband an equalizing judgment of $58,047 secured with a judgment lien on the ranch. Under the court's division, husband received $170,154 in assets, and wife was awarded assets valued at $402,921.

ORS 107.105(1)(f) provides, in part:

"Whenever the court grants a decree of marital annulment, dissolution, or separation, it has power further to decree as follows:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. A retirement plan or pension or an interest therein shall be considered as property. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held[.]"

In this case, the ranch was acquired during the marriage and, as a marital asset, is subject to the statutory presumption of equal contribution. *Stice and Stice*, 308 Or 316, 325, 779 P2d 1020 (1989). However, that presumption "may be overcome * * * by a finding that [the] property was acquired by one spouse by gift or inheritance, uninfluenced by the other spouse." *Jenks and Jenks*, 294 Or 236, 241, 656 P2d 286 (1982). We conclude that wife has overcome the presumption as to the two-thirds interest that she inherited from her father, because it is apparent from the record that wife's father did not intend husband to be a beneficiary of his devise. *See Pierson and Pierson*, 294 Or 117, 123, 653 P2d 1258 (1982) (holding that the presumption of the husband's equal contribution by nonfinancial means was rebutted because the wife's acquisition was by sole inheritance unaffected by the efforts of the husband).

■ Nevertheless, as the court said in *Jenks*, "[o]vercoming the statutory presumption of equality of contribution does not end [the] inquiry." 294 Or at 241. The statute requires us to provide a "just and proper" division or disposition of *all* the parties' real property, whether held jointly or separately, and whether acquired before or during the marriage. In *Jenks*, the court faced a situation similar to this case. During the parties' marriage, the husband's father and grandmother deeded him a farmhouse and 77 acres of land as a gift. The parties moved to the farmhouse, raised their children there, and improved it from a "dilapidated state to its present more valuable condition." *Id.* at 242. The court agreed with husband that he had rebutted the statutory presumption of equal contribution. Nevertheless, it concluded that it was just and proper to include the inherited property as part of the property division equation. The court noted:

> "When couples enter marriage, they ordinarily commit themselves to an indefinite shared future of which shared finances are a part. Acquisitions are made, foregone or replaced for the good of the family unit rather than for the financial interests of either spouse. Property is bought, sold, enhanced, diminished, intermixed and used without regard to ease of division upon termination of the marriage.
>
> "* * * * *
>
> "With each common financial act or decision, * * * the finances of the parties may become more interrelated, and extrication upon dissolution becomes increasingly difficult. The origin of each item becomes less significant in the overall task of making a property division which is 'just and proper in all circumstances.' This marriage is an example of one in which finances have become interrelated past the point of simple extrication." *Id.* at 242.

■ We conclude that the language in *Jenks* is instructive in this case. The cattle ranch was treated from the time it was inherited until the time of separation as a joint asset. The income from the ranch was put into the parties' joint checking account. The ranch-related expenses ultimately were paid out of the same account. The proceeds from the sale of their home in Gresham were invested in major part in the ranch. Furthermore, the ranch was the parties' residence from 1989 until they separated in 1992, and, outside of wife's

retirement pension, it is their major asset. Under these circumstances, it would not be just and proper to omit the ranch from the property division equation.

Nevertheless, we also conclude that there are just and proper reasons in this case to allocate a greater share of the ranch to wife. The cattle ranch has been in her family for 82 years. She has been much more involved than husband with the ranch operations. Husband has greater earning ability than wife, and wife has the additional financial burden of paying child support to husband. We do not wish to impose an equalizing judgment on wife that is so burdensome that it will cause her to sell the ranch. We therefore modify the judgment to include the two-thirds interest in the ranch and timber as part of the assets to be divided between the parties, and award husband all of the timber interest. We vacate the off-setting judgment. The disposition of the property is otherwise affirmed,[2] and the case is remanded for entry of a judgment in accordance with this disposition.

Remanded for entry of a judgment consistent with this opinion. Costs to husband.

---

[2] The trial court also included only the increase in value of the cattle as part of the property to be divided. However, husband does not dispute that decision, and we therefore express no opinion as to the correctness of that decision.