133

Argued and submitted May 3, 2000, vacated and remanded in part; otherwise affirmed October 3, 2001

In the Matter of the Marriage of

Cara Leigh GILBERT-WALTERS,
*Respondent,*

*and*

Scott Douglas WALTERS,
*Appellant.*

Cara Leigh GILBERT-WALTERS
and William L. Gilbert,
Guardian Ad Litem for Jennifer Leigh Gilbert,
*Petitioners,*

*and*

Scott Douglas WALTERS
and Robert Holt,
*Respondents.*

15-97-09723; A105636

33 P3d 709

George W. Kelly argued the cause and filed the brief for appellant.

Barbara Palmer argued the cause for respondent. With her on the brief was McCool & Palmer.

Before Edmonds, Presiding Judge, and Linder and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

Husband appeals from a dissolution judgment. He assigns error to the trial court's property division and also to its attorney fee award. We affirm the property division but reverse and remand the attorney fee award.

The parties were married in August 1995 and had cohabitated for approximately one year before they were married. At the time of dissolution, husband was 37 years old and wife was 46 years old. The parties had no children of their own, although wife's two children from an earlier marriage lived with them. During the marriage, wife worked part time as a teacher and earned approximately $12,250 per year. Husband was self-employed as an electrical contractor. In 1995, husband earned $26,656. In 1996, however, husband earned only $7,000.[1]

The assets husband brought into the relationship included a house on Demming Road, a house on Janus Street, a life insurance policy, two boats, a camper, two trucks, and various household furnishings. According to wife, the total market value of husband's assets, both at the time the parties began cohabitating and just before their marriage, was $234,900 and his liabilities totaled $135,637.49. Wife also brought substantial assets into the relationship, including a half interest in a mobile home on Blue View Drive, a Jeep, a motor home, a half interest in a boat, various investment and annuity accounts, a life insurance policy, a PERS account, and household furnishings. Wife estimates that the total market value of her assets at the time the parties began cohabitating was $347,685.83 and that her liabilities totaled $18,000. During the period of cohabitation, wife sold some of her stock and used the proceeds to make a $42,652 down payment on 40 acres of land and a manufactured home that she purchased for a total of $193,000. Wife also acquired a horse trailer, cattle, and two horses during the period of cohabitation. At the time the parties were married, wife estimates that the total market value of her assets had increased to $557,030.26 and that her total liabilities had increased to $169,000.

---

[1] There is no evidence in the record of what husband earned after 1996.

The parties partitioned the 40-acre parcel of land purchased by wife into two parcels, a five-acre parcel on which they put the mobile home and a 35-acre parcel on which they planned to build a log cabin to be used as their home. Before the parties were married, husband put approximately $5,700 into a joint account to finance the construction of the parties' home and a barn on the property. After the parties married, husband contributed to the construction of the parties' log cabin and living expenses: $26,000 he obtained by putting a second mortgage on his Janus Street property, $9,000 he borrowed from his brother, $20,000 he borrowed from his parents, $1,870 he borrowed from the cash value of his life insurance policy, and approximately $84,278 that he realized from the sale of his Demming Road property after paying off the mortgage on that property. In addition, husband contends that he contributed 30 hours per week of his own labor to building the parties' home, which resulted in a substantial reduction in his own personal income in 1996.

For her part, wife asserts that she paid most of the parties' living expenses from her income as a teacher and contributed money from her annuity and investment accounts. Wife also asserts that she, and her two children, also contributed their time to building the log cabin. In 1997, the parties refinanced wife's loan on the 40 acres and the log cabin. Wife contributed $30,000 to assist in obtaining the new financing. Under the refinancing arrangement, wife's original debt on the property, husband's debt to his brother, and the second mortgage on husband's Janus Street property were paid off. After refinancing, the parties still owed husband's parents the $20,000 that husband had borrowed from them and also owed the bank $233,000 on the new loan.

The parties separated in August 1997, and wife and her children moved out of the log cabin. Husband continued to live in the log cabin. Wife, however, continued to make the mortgage payment on the cabin. In October 1997, wife obtained an order restraining both parties from disposing of real or personal property. In January 1998, wife obtained an order restraining husband from doing anything that would be detrimental to the parties' real and personal property. Husband violated both restraining orders by selling about $100 worth of hay and by removing a telephone system and

part of a security system from the log cabin. In April 1998, the trial court entered an order granting wife exclusive possession of the log cabin. In September 1998, the trial court found husband in contempt for violating the October 1997 and January 1998 restraining orders.

In February 1999, the trial court entered a judgment dissolving the parties' marriage and dividing their property. In dividing the parties' property, the judge found that, even though the parties' marriage was a short-term relationship, "it [wa]s not possible to return the parties to their premarital circumstances, given the commingling of assets and liabilities which ha[d] taken place." The trial court also found that wife had overcome the presumption of equal contribution and stated that it had reflected their respective contributions in its property division.

The court awarded wife her separate property and, subject to all liens and encumbrances, the 35-acre parcel with the log cabin, the five-acre parcel with the manufactured home, all household goods, furnishings, appliances, linens, utensils, clothing, personal effects and belongings in her possession, all bank accounts in wife's sole name, all insurance policies on her life, her half interest in the property on Blue View Drive, a 1994 Jeep, a 1994 Chevrolet pickup, a 1996 Logan utility trailer, two horses and a foal, and five investment accounts. The court awarded husband his separate property and, subject to all liens and encumbrances, all household goods, furnishings, appliances, linens, utensils, clothing, personal effects and belongings in his possession, all bank accounts in his sole name, all insurance policies on his life, his business, the Janus Street property, a 1998 Chevrolet pickup, a 1973 Ideal flatbed truck, a flatbed trailer, and various other items of property including hay proceeds, a shotgun, a tractor, a stereo system, and a security system. The court also awarded husband a $70,000 equalizing judgment to be paid by wife.[2]

On appeal, husband assigns error to the trial court's property division. Husband neither assigns error to nor

_____

[2] The judgment requires the amount of the equalizing judgment to be reduced by the amount of attorney fees awarded to wife.

argues that the trial court erred in its finding that wife overcame the presumption of equal contribution. Rather, he argues that the trial court's property division is unfair. Husband states that, in addition to her premarital assets and a share of the household items, wife was awarded the following:

| | |
|---|---|
| "Appreciation in Blue View house: | $ 3,750 |
| "Appreciation in Waddell and Reed: | $ 37,742 |
| "Appreciation in PERS account: | $ 42,000 |
| "Appreciation in Manulife annuity: | $ 7,249 |
| "New Waddell and Reed account: | $ 3,039 |
| "1994 Chevrolet pickup: | $ 10,000 |
| "1996 Logan utility trailer: | $ 7,500 |
| "Log cabin with the 35 acres: | $123,000 |
| "Manufactured home with the 5 acres: | $159,000 |
| "$20,000 debt to husband's parents: | ($ 20,000) |
| "Equalizing judgment: | ($ 70,000) |
| "Total: | $303,280 |
| "Total less the appreciation in the pre-relationship assets: | $215,539 |
| "Total improvement in net worth between 10/94 and judgment: | $302,818" |

(citations and footnotes omitted). Similarly, according to husband, he was awarded his pre-relationship assets, a share of the household items, and the following:

| | |
|---|---|
| "Appreciation in Janus Street equity: | $10,000 |
| "1998 Chevrolet pickup: | $0 equity |
| "1973 Ideal Flatbed truck: | $ 2,000 |
| "Flatbed trailer: | $ 2,000 |
| "Equalizing judgment: | $70,000 |
| "Total: | $84,000 |
| "Total less appreciation in pre-relationship assets: | $74,000 |
| "Total improvement in net worth between 10/94 and judgment: | $ 1,637.49" |

(citations and footnote omitted). Husband's figures are based, with a few exceptions,[3] on values asserted by wife. When

---

[3] Husband based his figure for the equity on the log cabin and 35 acres on the average of the appraisal submitted by wife's expert and the appraisal submitted by

asked at oral argument if wife disagreed with any of husband's figures, wife's attorney responded that she believed the equity in the 35 acres and log cabin should be $100,000 instead of the $123,000 asserted by husband but was not prepared at that time to dispute any of husband's other figures. In addition to the marital assets listed by husband, he was also awarded several other items of property. Although there is no evidence of the value of many of those items of property, included in those items are a tractor valued at $12,000 and at least $100 in hay proceeds.[4]

Husband suggests equalizing the property division by either increasing his equalizing judgment to $109,640 or by awarding him the five-acre parcel with the manufactured home and decreasing his equalizing judgment to $20,640. Wife responds by asserting that "considering the length of the marriage, the parties' contributions to assets acquired and expenses incurred during the marriage, the benefit Husband received by Wife paying the monthly mortgage after separation, the damages Wife suffered as a result of Husband's willful and intentional disobedience of the court's orders, the division of assets is appropriate and fair."

ORS 107.105(1)(f) governs the division of marital property in a marital dissolution action. That statute requires that the court divide the parties' property in a manner that is "just and proper in all the circumstances." ORS 107.105(1)(f). There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage. *Id.* Where, as here, the rebuttable presumption of equal contribution has been overcome:

"the presumption drops from the case and the court divides the property according to the magnitude of each spouse's contribution to the acquisition of marital assets. In other words, the court distributes the marital assets without

---

his expert. Also, husband did not accept wife's figures on the appreciation of her Waddell and Reed accounts because wife decreased the value of those accounts by 34 percent to account for her tax obligation. In husband's view, whether wife will ever pay those taxes is speculative and thus cannot be assumed. Finally, wife provided no evidence of the value of the 1998 Chevrolet pickup awarded to husband.

[4] Other items awarded to husband include an Italian shotgun, an outboard motor, a tent, a bale loader, tack and bridles, a rototiller, a mower, building materials, cattle proceeds, a satellite television system, a security system, and outdoor speakers. There is no evidence in the record of the value of those items.

> regard to any presumption, but in a manner that is just and proper in all the circumstances, including the proven contributions of the parties to the acquisition of marital assets."

*Massee and Massee*, 328 Or 195, 205, 970 P2d 1203 (1999). Because during the time the parties cohabitated before marriage there was substantial commingling and interdependence of finances, we consider the contributions of each party during the entire length of their relationship, not simply the contributions during the time they were married. *See Troffo and Troffo*, 151 Or App 741, 746, 951 P2d 197 (1997). We review the trial court's division of property *de novo. Bidwell and Bidwell*, 170 Or App 239, 242, 12 P3d 76 (2000), *on recons* 172 Or App 292, 18 P3d 465, *rev den* 332 Or 305 (2001). "We will not modify the trial court's property division, however, unless we are convinced that we can make a significantly preferable disposition." *Id.*; *Watson and Watson*, 107 Or App 416, 420, 812 P2d 429 (1991).

Because the trial court found that the presumption of equal contribution had been overcome in this case, and neither party challenges that finding on appeal, we begin by assessing the magnitude of each spouse's contribution to the acquisition of marital assets in order to determine the proper distribution of the marital assets. *See Massee*, 328 Or at 205. It is not disputed that, during the parties' relationship, wife contributed $42,652 for the down payment on the 40 acres of land she purchased during the period of cohabitation, $30,000 at the time the loan on the 40 acres was refinanced, her salary of approximately $12,250 per year, funds from her annuity and investment accounts, and some personal labor in the construction of the log cabin. According to wife's figures, she contributed a total of $232,704.54 to the relationship.

For husband's part, it is undisputed that he contributed $5,700, which he put in a joint account to finance construction of the parties' residence and a barn, $26,000 from a second mortgage on his Janus Street property, $9,000 that he borrowed from his brother, $20,000 that he borrowed from his parents, $1,870 that he borrowed from his life insurance policy, and $84,278 that he realized from the sale of his Demming Road property. In addition, husband contributed

his personal labor to the construction of the log cabin. When the loan on the 40 acres and log cabin was refinanced, however, the second mortgage on husband's Janus Street property and husband's brother were repaid. Also, under the dissolution judgment, wife is responsible for repaying the $20,000 owed to husband's parents. Wife estimates that husband contributed a total of $95,260 to the relationship.[5]

Using wife's numbers, the economic contributions to the relationship by both parties totaled $327,964.54. Husband contributed $95,260 or approximately 29 percent of the total contribution. Wife contributed $232,704.54 or approximately 71 percent of the total contribution. According to husband, wife received, after subtracting the appreciation in pre-relationship assets, $215,539 while he received only $74,000. If the tractor and hay proceeds that husband received are also included, he received $86,100. Thus, husband's economic contribution to the relationship equaled roughly 29 percent of the parties' total economic contribution, and he received approximately either 28.5 or 30.9 percent[6] of the marital assets in the trial court's property distribution.

Although the trial court did not articulate the basis for its property division, wife had argued, and the trial court appears to have agreed, that the parties' marital assets should be divided based on their relative economic contributions during their marriage. That principle is consistent with the Supreme Court's reasoning in *Massee*. 328 Or at 205. On appeal, husband argues that the trial court should have divided the parties' marital assets, or at least the equity in the log cabin, equally. Husband, however, does not challenge the trial court's finding that the presumption of equal contribution has been rebutted. And he offers no reason why, in the

---

[5] Husband does not dispute wife's figures. According to our calculation, not including husband's labor on the log cabin, husband contributed a total of $91,848 to the relationship. Our calculation includes the $5,700 he put in a joint account for use on the construction of the log cabin and barn, $84,278 he realized from the sale of his Demming Road property, and $1,870 he borrowed from his life insurance policy. Because wife's figures are more favorable to husband, we use wife's figures.

[6] Using husband's figures, husband received approximately 25.5 percent of the total marital assets. As discussed above, however, wife asserted at oral argument that the total marital equity on the log cabin and 35 acres should be only $100,000, not $123,000 as husband asserts. When the marital assets are reduced by $23,000 as wife suggests, husband received 27.7 percent of the total marital assets.

absence of that presumption, he should be entitled to share equally in some or all of the marital assets to which wife made a substantially greater financial contribution.[7] We explained in *Dull and Dull*, 104 Or App 275, 278, 800 P2d 306 (1990), that, even though the parties in that case had commingled their assets, "special circumstances * * * may dictate an unequal division of property." In that case, the special circumstances included the fact that the court could trace the parties' relative contributions over their four-year marriage and determine that the wife had both brought greater assets into the marriage and had made greater contributions to the construction of their home. *Id.* Wife relied on this principle below, the trial court implicitly adopted it, and husband has not explained on appeal why this case does not also fall within the "special circumstances" that we recognized in *Dull.* On this record, and given the procedural posture of the case, we are not convinced that we can make a significantly preferable property division than the trial court made. *See Watson*, 107 Or App at 420. We accordingly affirm the trial court's property division.

Husband also argues that the trial court erred in awarding wife attorney fees. The trial court found that husband's actions caused this case to be a more expensive case to resolve and awarded wife $20,000 in attorney fees associated with the dissolution. The trial court also awarded wife $9,550.39 in attorney fees that she expended in the contempt action against husband.[8] Husband admits that, by violating

---

[7] Husband contributed his time to the construction of the parties' log home, but wife contributed her time as well. Although we know the loss of income that husband experienced when he devoted much of his time to working on the parties' home, his lost business income does not provide a reliable measure of the value of the time he spent working on their home. Without that evidence, we would have to speculate about the relative value of the time that both husband and wife contributed to the cabin. We decline to do so. *See Bidwell*, 170 Or App at 244 (declining to take tax liability into account when no evidence was presented on its effect).

[8] Petitioner sought a total of $42,142.03 in attorney fees and costs, which included $25,056.80 allocated to the dissolution, $9,550.39 as fees incurred as a result of husband's violation of the restraining orders and resulting contempt, and $7,534.84 as fees and costs incurred in obtaining provisional process to recover two horses owned by wife's children. The trial court awarded wife $20,000 in attorney fees for the dissolution and $9,550.39 as a result of husband's contempt proceeding. The trial court did not award wife any of the requested attorney fees associated with the provisional process.

restraining orders during the pendency of the parties' dissolution, he increased the cost of litigation and thus, it was within the trial court's discretion to award wife some attorney fees. Husband argues, however, that the amount that the trial court awarded was too high. In husband's view, a reasonable attorney fee award in favor of wife should not exceed $4,000. Wife responds that she reasonably and necessarily incurred the attorney fees and that they are an appropriate sanction for husband's violation of the restraining orders and resulting contempt.

■        When a court grants a judgment of dissolution, it may also enter a judgment against one party in favor of the other for "any further sums as additional attorney fees or additional costs and expenses of suit or defense as the court finds reasonably and necessarily incurred by such party[.]" ORS 107.105(1)(i). Also, in any contempt proceeding in a suit for dissolution, the court may award reasonable attorney fees. ORS 107.445.[9] We review the trial court's award of attorney fees under both ORS 107.105(1)(i) and ORS 107.445 for abuse of discretion. *Woods and Woods,* 74 Or App 562, 564, 703 P2d 1041 (1985); *Tiley and Tiley,* 147 Or App 262, 268, 936 P2d 367 (1997).

Wife sought greater fees for the dissolution proceeding in large part because of husband's conduct that led to the contempt proceeding and the provisional process proceeding against him.[10] In awarding wife $20,000 in attorney fees associated with the dissolution the trial court may have accepted wife's claim that husband's actions "caused this to

[9] Also, under ORS 33.105(1)(e), upon which wife relies in her argument for attorney fees associated with the contempt proceeding against husband, a court may impose as a remedial sanction an award requiring a party to pay "all or part of any attorney fees incurred by a party as the result of a contempt of court." Because ORS 107.445 is more specific, in that it applies to contempt proceedings in an action for dissolution, we cite that statute instead of the more general contempt statute, ORS 33.105(1)(e).

[10] Wife asserted in her affidavit in support of attorney fees that her attorney fees were substantially greater than they should have been because of: (1) the need to bring a contempt action against husband for his failure to comply with the trial court's restraining orders; (2) husband's failure to be forthright in his testimony at a hearing and in depositions concerning the sale of horses, hay, and other property; (3) husband's unsubstantiated claims that he expended large sums of money on the building of the parties' log cabin; and (4) husband's failure to act reasonably or with diligence in pursuing a settlement to the dissolution action or the contempt action.

be a more expensive case to resolve." The court also awarded her $9,550.39 in attorney fees for the contempt proceeding.[11]

To the extent that wife was awarded $20,000 in attorney fees associated with the dissolution because husband "caused this case to be a more expensive case to resolve[,]" that award may duplicate the attorney fees that the trial court awarded wife for the contempt proceeding. We cannot tell whether it does, and the court made no findings that would explain the basis for its fee award. At a minimum, the trial court must specify the reasonable number of hours and reasonable hourly rate on which it based its fee award. *See McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 188 n 1, 957 P2d 1200 (1998). Without those findings, we cannot engage in meaningful appellate review. *Id.* at 188. Although the trial court had discretion to award wife attorney fees, we cannot determine without additional findings whether it properly exercised that discretion.

Award of attorney fees vacated and remanded; otherwise affirmed.

---

[11] The trial court did not award wife any attorney fees for the provisional process proceeding, and wife has not challenged that denial on appeal.