Argued and submitted August 16, affirmed November 13, 2002, petition for review
denied March 25, 2003 (335 Or 267)

## In the Matter of the Marriage of

### Randy VAN HORN,
*Respondent,*

*and*

### Gloria Jean VAN HORN,
*Appellant.*

### 99DM-0297; A111678

57 P3d 921

Helen T. Dziuba argued the cause and filed the briefs for appellant.

Jesse Chandler Margolis argued the cause for respondent. With him on the brief was Olin & Margolis, P. C.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

Wife appeals from a dissolution judgment awarding husband half of the equity in a home acquired during the course of their marriage. She contends that, because the house was acquired solely as a result of her inheritance, she should have been awarded all of the equity. We affirm.

Wife and husband were married in May 1993. It was husband's third marriage and wife's fourth. At the time of their marriage, they lived in California. Husband worked as a plant operator and earned approximately $40,000 a year. Wife was employed intermittently during the marriage, earning at most $20,000 a year. However, wife was the beneficiary of a sizable trust established by her grandparents. In the first years of the trust, wife received approximately $25,000 a year in trust distributions. By the time of dissolution, wife was receiving nearly $100,000 a year. Wife and husband also received $10,000 a year as a gift from wife's father. Additionally, wife inherited a significant amount of stock from her grandfather during the marriage.

At the beginning of their marriage, the parties had a joint account in which they deposited husband's income from work and wife's income from her trust fund. However, due to concerns that husband's former wife would try to use wife's trust fund income to increase her own spousal and child support, wife opened a money market account in her name only. She deposited her trust fund money into that account. The parties continued to keep a joint account, into which husband had his paychecks directly deposited. Wife would transfer money from her money market account into the joint account for living expenses, and she estimates that she contributed an amount each month that was equal to husband's monthly income. When wife earned income from employment, that money went into the parties' joint account. In addition, the yearly gifts from wife's father were deposited into the joint account and spent for family purposes. The majority of the other bank accounts and credit cards were maintained in both parties' names.

During the course of the marriage, the parties purchased a home in California. In 1997, they began planning to

move to Oregon. Wife traveled to Oregon in order to find property on which they could build a home. She found and purchased property in Brookings for $130,000. Title to the property was put in wife's name only, again under the belief that doing so would protect it from any future action by husband's former wife. The money to purchase the property came from one of wife's separate accounts. The parties began constructing a home on the property shortly after its purchase. Money for the construction generally came from wife's money market account. Occasionally, wife would use money from the parties' joint account for the Oregon property expenses, but she would reimburse that account with funds from her money market account. The parties continued to use their joint account for living expenses. Wife lived and worked on the property full time, while husband continued to live in California until he was able to find work in Oregon. Husband traveled to Oregon on weekends and holidays and helped wife work on the property, preparing it for construction.

Wife and husband separated in May 1999. At that time, wife continued to live in Oregon and husband remained in California.[1] At trial, wife asked that she be awarded the Oregon property because husband had not contributed, economically or otherwise, to its acquisition. On that point, the trial court found:

> "The main asset of this marriage is the real property located in Brookings. It consists of a lot that [wife] paid $130,000 for and a house that cost approximately $350,000 to build. The property is in [wife's] name only. The parties have stipulated that it is worth $477,000 with $226,000 still owed on it. This results in [equity] of $251,000. * * * [Wife] alleges that this real property is her sole and separate property. She did purchase the property in her own name and entered into a contract to build it separately. However[, husband] was involved in the planning process for building the home. He also worked on site preparing the lot for building and on the house itself on numerous occasions. Some of this occurred on single days and on other occasions he worked several days on site. It would appear the way the ownership of this property was structured had more to do

---

[1] The parties sold their California house shortly before they separated, and the proceeds of that sale were deposited into wife's money market account.

with the conflict [husband] had with his prior wife than an effort by [wife] to keep her inheritance separate from her husband. [Husband] was involved in the selection of fixtures for the home. He seemed to take as active a role as possible given the fact that he still resided in California. The parties had jointly agreed that [husband] should retain his job in California until the house was completed. [Wife] has not overcome the presumption of joint contribution to a marriage in either the real or personal property.

"Even though the parties had separate banking accounts, they treated their money as family assets. It was spent on a regular basis for family activities and necessities. * * * [Husband] shall be entitled to one half of [the equity in the Brookings house]."

Wife appeals, arguing that, although the property was properly categorized as marital property under ORS 107.105(1)(f), she rebutted the statutory presumption of equal contribution and that, as a result, she should have been awarded the entire property. She points to the fact that the money for the property and construction of the home came entirely from her inheritance and that she did the majority of the work during the construction of the house. Husband, in turn, argues that, as a general practice, the parties' funds were commingled throughout the marriage and the parties jointly contributed to the acquisition of the property.

■ ORS 107.105(1)(f) (1997), *amended by* Or Laws 1999, ch 762, § 1, provides:

"(1) Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

Because the Oregon property was acquired during the course of the marriage, it is a marital asset and subject to the presumption of equal contribution. *Day and Day*, 137 Or App 264, 268, 904 P2d 171 (1995), *rev den*, 322 Or 598 (1996). The burden of overcoming that presumption falls on wife. In deciding whether the presumption has been rebutted, we must first "determine the magnitude of each spouse's overall contribution to the acquisition" of the marital asset. *Massee and Massee*, 328 Or 195, 205, 970 P2d 1203 (1999). On that point, wife argues that the property and construction of the house was paid for exclusively from her money market account, which was funded by the inheritance that she received from her grandparents. Wife contends that, because the property was paid for by her inheritance and because husband did not contribute to the acquisition of the inheritance, she overcame the presumption of equal contribution. As noted, husband argues that, because the parties commingled their assets, wife has not overcome the presumption of equal contribution.

In *Jenks and Jenks*, 294 Or 236, 241, 656 P2d 286 (1982), the Supreme Court held that one spouse's demonstration that the inheritance had been acquired free from any contribution of the other spouse rebutted the presumption of equal contribution. After making that determination, the court went on to explain that "the presumption is only one consideration in determining a property division which is 'just and proper in all the circumstances.'" *Id.* at 241-42. Other equitable considerations, such as commingling of funds, may support an equal division of property even though the presumption of equal contribution has been overcome. *Id.* at 242. Considering evidence of commingling, the court held in *Jenks* that the proceeds of the husband's inheritance in that case should be divided equally. *Id.* at 242-43; *see also Isham and Isham*, 139 Or App 433, 437-38, 912 P2d 925, *on recons*, 141 Or App 301, 917 P2d 75 (1996) (employing the same methodology).

In *Rykert and Rykert*, 146 Or App 537, 543, 934 P2d 519 (1997), we held that evidence concerning whether the inheritance had been commingled with the family finances

was relevant to determining whether the statutory presumption has been overcome, as is the degree of control exerted by the parties over the asset.[2] In *Rykert*, the wife had received an inheritance from her mother one year before the parties separated. 146 Or App at 543. The inheritance had been given to the wife only. *Id*. However, she asked the husband to invest the inheritance and to place the investments in her name only. The husband did so, later testifying that, although they were placed in the wife's name only, there had been no discussion that the assets were hers alone and were not a family asset. *Id*. On that evidence, we concluded that the wife had not overcome the statutory presumption of equal presumption. *Id*. at 543-44.

In *Rykert*, we considered evidence of commingling in determining whether the presumption of equal contribution had been rebutted rather than reserving consideration of commingling until after we determined whether the presumption had been overcome, as the court did in *Jenks*. *See Butler and Butler*, 160 Or App 314, 320-21, 981 P2d 389 (1999) (following the methodology in *Rykert*). Here, the evidence shows that, when wife received her first trust distribution, she deposited it into the parties' joint checking account. However, upon the advice of an accountant, she ultimately opened a separate account (the money market account) and deposited all future trust distributions in that account. That action was not taken because the parties did not wish to commingle their financial affairs but merely to safeguard the trust income from husband's former wife.

Other evidence demonstrates the extent to which wife and husband commingled their funds and wife's inheritance money, as well as the extent to which the parties jointly incorporated the money into their finances. As discussed above, it was the parties' practice for wife to transfer her trust income into the parties' joint account as needed to pay housing and other expenses. On one occasion, after receiving proceeds from the sale of their California house, wife had husband sign the check and then deposited that amount into

_____

[2] It does not change the fact that it is a marital asset, subject to the presumption of equal contribution. ORS 107.105(1)(f) (1997); *Engle and Engle*, 293 Or 207, 214-15, 646 P2d 20 (1982).

her money market account. Further, the parties were planning to move to Oregon and live in the house that was being constructed on the property; that husband had not yet moved was only a matter of available employment. The house was in wife's name due only to the couple's concern about husband's former wife; it was not intended to reflect the division of the parties' financial affairs. Finally, husband testified that the parties planned their finances around wife's trust fund distributions and that wife assured husband that, because of the large amount of her trust fund, they would not "have to worry about anything again."

■　　　That evidence convinces us that, although husband did not contribute to the acquisition of the money that ultimately paid for the Oregon property, wife contributed her trust fund money to the joint uses of the parties to such an extent that she has either not rebutted the statutory presumption of equal contribution to the Brookings property, *see Rykert*, 146 Or App at 544, or, if she has rebutted the presumption, that equity demands that husband still share in the value of the property, *see Jenks*, 294 Or at 242-43.[3] While the money may have been segregated in name, it was not meant to be segregated in practice. We affirm the trial court's decision that husband is entitled to one half the value of the Brookings property.[4]

　　　Affirmed.

--------

[3] Wife relies heavily on our decision in *Gilbert-Walters and Walters*, 177 Or App 133, 33 P3d 709 (2001). That case, however, is inapposite. In *Gilbert-Walters*, the husband did not challenge the trial court's finding that the wife had rebutted the presumption of equal contribution. *See* 177 Or App at 141. And, as we explained, "he offer[ed] no reason why, in the absence of that presumption, he should be entitled to share equally in some or all of the marital assets to which wife made a substantially greater contribution." *Id.* at 141-42. Our holding in *Gilbert-Walters* turned in large part on the husband's failure to explain why the trial court's property division should be modified. *Id.* at 142. Here, husband seeks to uphold the trial court's property division, and the arguments that were absent in *Gilbert-Walters* are present here.

[4] In her second assignment of error, wife argues that the trial court erred in reserving jurisdiction to modify the property division if she did not prevail in a separate action concerning the Oregon property. Relying on *Babb and Babb*, 30 Or App 581, 567 P2d 599, *rev den*, 280 Or 521 (1977), husband responds that the trial court merely preserved the option to adjust the amount of the equalizing judgment depending on the outcome of the other action. We need not decide that issue. While this action was pending, we resolved the other action in wife's favor. *See Olson v. Van Horn*, 182 Or App 264, 48 P3d 860, *rev den*, 334 Or 631 (2002). The issuance of an appellate judgment in *Olson* moots wife's second assignment of error.