Argued and submitted August 4, 2008, judgment modified to award wife indefinite spousal support of $550 per month; otherwise affirmed January 28, 2009

In the Matter of the Marriage of

John Lee POWELL,
*Petitioner-Appellant,*
*and*

Jo Anne POWELL,
nka Joey Wakefield,
*Respondent-Respondent.*

Lane County Circuit Court
150602667; A134463

202 P3d 183

George W. Kelly argued the cause and filed the briefs for appellant.

Jeffrey E. Potter argued the cause for respondent. With him on the brief was Gardner, Honsowetz, Potter, Budge & Ford.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

On appeal in this dissolution of marriage case, husband challenges the trial court's property distribution and its award of spousal support to wife. In particular, he asserts that the trial court erred in allocating to him the financial responsibility for the majority of the credit card debt incurred by the parties, in awarding wife the marital residence, in treating husband's half interest in the family cabin as a marital asset, and in awarding wife $750 per month indefinite spousal support. On *de novo* review, ORS 19.415(3), we modify the amount of spousal support and otherwise affirm.

Husband and wife were married in 1981. At the time of trial, husband was 56 years old, and wife was 54 years old. During the marriage, husband worked as a professional musician and private music tutor, and wife worked as a cocktail waitress, restaurant manager, video store manager, and a cook at a public school. Wife's most recent job as a cook ended in April 2005, and she has not been employed since that time. The parties separated in October 2004, and, after their attempts at reconciliation failed, husband filed for dissolution of their marriage in 2006.

At the time of the dissolution proceeding, the parties' assets consisted of the marital residence, a rental property, a half-interest in a vacation cabin, two vehicles, wife's PERS account, and personal property. Additionally, the parties had accumulated a substantial amount of credit card debt. After hearing the evidence, the trial court found that husband had incurred approximately two-thirds of the credit card debt after the parties separated and that husband's one-half interest in the vacation property was a marital asset. Also, wife's medical expert testified that, although wife suffers from physical disabilities, she would be able to work part time if she were on proper medication but, "[a]t present, I don't think she could tolerate that. Under the present conditions, without medications, I don't believe she's able to do that." Based on the record before it, the trial court awarded the equity in the marital residence and $750 per month indefinite spousal support to wife. Husband assigns error to the trial court's property division and to the award of spousal support.

As to the trial court's division of the marital property, husband asserts on appeal that the trial court erred (1) in ruling that husband's interest in the vacation property was a marital asset, (2) in requiring husband to pay approximately two-thirds of the credit card debt, and (3) in giving wife the long half of the marital estate. Wife responds that, as to the vacation property, the trial court ruled correctly because she, husband, and their child "went [there] all the time as a family" and that the property's maintenance expenses had been paid throughout the marriage with marital funds. As to the credit card debt, wife asserts that the trial court properly assigned the debt to husband because the majority of the debt was incurred by husband after the parties separated. Finally, as to the award of the long half of the marital estate to wife, wife contends that husband's argument is premised on a calculation that unfairly reduces his amount of the marital estate by the amount of the credit card debt attributed to him by the trial court. According to her calculation, if the credit card debt is not used to reduce the amount of the marital assets received by husband, "wife receives $146,799 in property and husband receives $121,560 plus the value of his copyrights and his businesses[,]" or about $25,000 more to wife than to husband.

 Based on our *de novo* review of the record, we conclude that the trial court did not err with regard to its findings that the one-half interest in the cabin was a marital asset and that husband had individually incurred the bulk of the credit card debt. ORS 107.105(1)(f) governs the division of marital property in a dissolution of marriage proceeding. That statute requires that the court divide the parties' property in a manner that is "just and proper in all the circumstances." ORS 107.105(1)(f). Also, there is a rebuttable presumption that both parties have contributed equally to the acquisition of property acquired during the marriage. *Id*. Preliminarily, we observe that the credit card debt issue (whether the credit card debt is marital debt or husband's personal debt) turns on whether husband or wife is the more credible witness. In that regard, we defer to the trial court's implicit finding that wife was the more credible witness regarding the credit card debt. *O'Donnell-Lamont and Lamont*, 337 Or 86, 89, 91 P3d 721 (2004), *cert den*, 543 US

1050 (2005) ("In our *de novo* review of the record, we give 'considerable weight to the findings of the trial judge who had the opportunity to observe the witnesses and their demeanor in evaluating the credibility of their testimony.' ") (quoting *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 194, 796 P2d 1193 (1990)). Second, this court will not modify a trial court's property division unless it is convinced that it can make a significantly preferable disposition. *Gilbert-Walters and Walters*, 177 Or App 133, 140, 33 P3d 709 (2001). Applying those principles to the parties' circumstances, we conclude that the trial court's award of the long half of the marital assets to wife, including the equity in the marital residence, constitutes an equitable award, particularly in light of wife's physical disability and her need, based on her limited income, for a place to live.

We turn to husband's argument that the trial court erred in awarding indefinite spousal support of $750 per month to wife. In particular, husband asserts that his total monthly income "comes to about $1,683" and that wife's medical expert testified that wife is physically able to work part time. Wife responds that indefinite spousal support of $750 per month is an appropriate figure because "[t]he record shows husband's testimony about his income to be both inaccurate and incomplete." For the reasons explained below, we find that husband's testimony understates his gross monthly income. However, we also conclude that it is equitable to factor in wife's earning ability, assuming she is able to pay for medications for her physical disability.

Husband works as a professional musician and music teacher. In 2001, 2002, and 2003, the parties jointly filed their federal income tax returns. The parties reported that husband's income was $16,842 in 2001, $15,057 in 2002, and $6,542 in 2003. As of the date of trial, the parties had not filed their 2004 and 2005 tax returns. However, husband offered evidence that in 2005 he earned $15,691 from his performances. Husband also testified that he earns "$877.50 gross" per month from teaching music students and that renting the room in which he teaches costs him about 20 percent of those gross earnings. Those amounts suggest that husband's gross income is approximately $2,000 per month.

Wife's most recent job was as a head cook at a Eugene public school where she earned $11.50 per hour. However, in 2005, she was forced to leave her job after the school put in a new gym, because she became "sensitized for life to asphalt, primer, and primer sealer." In addition to her chemical sensitivity, wife has also developed a back condition, and she suffers from panic attacks. Nonetheless, according to wife's expert, with the "right medications" she can work part time—four hours a day for five days a week.

■■ ORS 107.105(1)(d)(C) identifies a nonexclusive list of factors that a court should consider in making an indefinite spousal maintenance determination:

"(i) The duration of the marriage;

"(ii) The age of the parties;

"(iii) The health of the parties, including their physical, mental and emotional condition;

"(iv) The standard of living established during the marriage;

"(v) The relative income and earning capacity of the parties, recognizing that the wage earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property;

"(vi) A party's training and employment skills;

"(vii) A party's work experience;

"(viii) The financial needs and resources of each party;

"(ix) The tax consequences to each party;

"(x) A party's custodial and child support responsibilities; and

"(xi) Any other factors the court deems just and equitable."

No single factor is dispositive. *Arand and Arand*, 182 Or App 368, 374, 49 P3d 799 (2002). The primary goal of spousal support, following a long-term marriage such as this one, is to provide a standard of living comparable to the one enjoyed during the marriage. *Mallorie and Mallorie*, 200 Or App 204, 219-20, 113 P3d 924 (2005), *rev den*, 340 Or 18 (2006).

■ We are not persuaded, based on the record before us, that wife is unable to work part time. Rather, her physical ability to work appears to be predicated on her receiving proper medications for her physical conditions. It follows that any spousal support award should provide monies for medications as well as for the mortgage payments on the marital residence ($373 per month). Based on her earnings record, we infer that she has an earning capacity of approximately $900 per month. Finally, in the absence of more current income tax returns, we are not persuaded by wife's contention that husband's earning capacity is significantly greater than what husband testified to. Thus, the record supports a finding that husband's present monthly income is approximately $2,000 per month when the earnings from his band performances and his teaching income are combined.[1] Under the circumstances, we conclude that an equitable amount of indefinite spousal support to award is $550 per month in order to afford parity in the parties' disposable income. *See, e.g.*, *Potts and Potts*, 217 Or App 581, 590, 176 P3d 1282 (2008) ("[T]he purpose of an award of spousal support is not to eliminate all disparities in the parties' incomes. Rather, as discussed, the aim of indefinite maintenance spousal support is to enable the parties to live separately at a standard of living not overly disproportionate to that enjoyed by them during the marriage, to the extent possible." (Citations omitted.)).

Judgment modified to award wife indefinite spousal support of $550 per month; otherwise affirmed.

---

[1] Husband asserts that his performance income should be reduced by at least 25 percent for business expenses. However, as is the case with some of wife's assertions, there is an absence of documentary evidence to support his contention, and we decline the parties' invitations to speculate about the amounts of any earnings or expenses that existed at the time of trial without supporting documentation.