2012 OK CIV APP 111

Karon K. MEDLIN, Plaintiff/Appellant,

v.

PILOT TRAVEL CENTERS, L.L.C., Defendant/Appellee.

No. 109986.

Court of Civil Appeals of Oklahoma, Division No. 4.

Nov. 20, 2012.

Joseph S. Carson, Homsey Cooper Hill & Carson, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Brandon S. Nichols, Brandon S. Nichols, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee.

JERRY L. GOODMAN, Presiding Judge.

¶1 Karen K. Medlin (Customer) appeals from the trial court's September 16, 2011, Journal Entry of Judgment which memorialized an April 6, 2011, jury verdict rendered in favor of Pilot Travel Centers, L.L.C. (Pilot). We hold reversible error occurred when the trial court instructed the jury on the defense of assumption of the risk. We reverse and remand for a new trial.

## BACKGROUND

¶2 This is the second appeal arising from Customer's claim for injuries she suffered in 2003, when, as a business invitee, she slipped and fell on Pilot's premises. Customer had stopped for fuel. Upon descending from her truck, she slipped and fell in what was later determined to be a mixture of diesel fuel and water. She sustained significant injuries. A jury trial in 2008 resulted in a jury verdict in favor of Customer. Pilot appealed on the grounds the jury was improperly instructed; this Court agreed by reversing and remanding the matter to the trial court for a new trial.[1]

¶3 A second trial was conducted in 2011, resulting in a verdict in favor of Pilot. This time Customer appeals, alleging that the jury was again erroneously instructed. We agree. The jury was improperly instructed; therefore, we reverse the trial court's judgment, and remand the matter for a new trial.

## STANDARD OF REVIEW

■■■ We review given or refused jury instructions and verdict forms to determine whether there is a probability the jurors were misled and thereby reached a different conclusion than they would have reached but for the questioned instruction or verdict form, or whether there was excluded from consideration a proper issue of the case. *Ankney v. Hall*, 1988 OK 101, ¶9, 764 P.2d 153, 155; *Woodall v. Chandler Material Co.*, 1986 OK 4, ¶13, 716 P.2d 652, 654.

*FFE*, *id.*, at ¶13, at 537–38. Further,

The power of an appellate court to disturb a jury's verdict on the basis of an error in jury instructions is tightly circumscribed and can be exercised only if the court concludes that the error "has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." Okla. Stat. tit. 20, § 3001.1 (2001); *see also Lierly v. Tidewater Petroleum Corp.*, 2006 OK 47, ¶15, 139 P.3d 897, 902. This Court can disturb a jury's verdict only if it concludes that an error in a jury instruction is so pervasive that the instructions as a whole create the "probability that the jury was misled into reaching a result different from that which would have been reached but for the error." *Myers v. Mo. Pac. R.R.*, 2002 OK 60, ¶29, 52 P.3d 1014, 1028–29.

---

1. *FFE Transportation Services, Inc. v. Pilot Travel Centers*, 2010 OK CIV APP 7, 228 P.3d 535.

*Snyder v. Dominguez,* 2008 OK 53, ¶ 8, 202 P.3d 135, 138.

## ANALYSIS

### 1. Notice Instruction

██ ¶ 4 At the close of the trial, the jury was given the following non-OUJI instruction entitled "Notice."

> Unless you find that Pilot had notice or could be charged with gaining knowledge of the condition in time sufficient to effect its removal or to warn of its presence, you must find in favor of the Defendant. See *Rogers v. Hennesse [Hennessee]*, 602 P.2d 1033, 1035–1036 (Okla.1979), *McKinney v. Harrington*, 855 P.2d 602, 604 (Okla.1993).

¶ 5 Customer proposes this instruction was erroneous based on the evidence presented at trial. She argues her expert witness opined, without contradiction, that Pilot's placement of water faucets near the diesel fueling pumps would inevitably lead to a puddling of water and diesel mixture causing a dangerously slippery condition. In addition, Customer posits that Pilot's own witnesses admitted the majority of injury claims against it involved slipping on water-diesel mixtures. Therefore, Customer argues Pilot always had constructive notice of the spill and any instruction exonerating Pilot because of lack of notice was erroneous.

¶ 6 However, Customer testified that when she reported her injury to Mr. Green, Pilot's employee, he told her that another driver had "overfueled," spilling diesel on the concrete. The inference drawn from this statement was that Pilot was not aware of the spill, until Customer fell, thus having no opportunity to clean up the spill.

¶ 7 As seen, the jury was presented with two different theories. Customer argues Pilot was on constructive notice of the dangerous condition because of the historically high number of claims resulting from the same condition as that encountered by Customer. Pilot argues to the contrary that it was unaware of the spill that day because a previous customer had overfueled, thus preventing sufficient time to remedy the condition. We find, given that the underlying fact the slippery condition existed is undisputed, a rea-

sonable jury could differ on how the condition was created and how long it had existed before Customer fell. The given "notice" instruction accurately reflects the law in this regard. We find no merit to this proposition of error.

### 2. Creation of Risk Instruction

██ ¶ 8 Customer presented an expert witness who opined Pilot's choice to locate water faucets near the diesel pumps inevitably led to the creation of dangerous puddles of water/diesel mixtures. Therefore, she argues Pilot was on notice of such dangerous conditions. Customer also contends she was entitled to an instruction absolving her of any duty to warn due to Pilot's creation of the condition. In support of this argument, she submitted a proposed instruction based on *Lingerfelt v. Winn–Dixie Texas, Inc.*, 1982 OK 44, 645 P.2d 485.

> An operator of a self-service operation is charge [sic] with knowledge of the foreseeable risks inherent in such a mode of operation.

¶ 9 Indeed, this proposed instruction accurately reflects the law. *Lingerfelt* states:

> The rule seems to be that where the negligent act causes consequences such as in the ordinary course of things, were likely to arise, and which might, therefore reasonably be expected to arise, or which it was contemplated by the parties might arise, liability follows; otherwise not. *Stephens v. Oklahoma City Ry. Co.*, 28 Okl. 340, 114 P. 611 (1911).

*Lingerfelt*, at ¶ 22, at 488.

¶ 10 Customer argues the trial court erred in refusing to give this instruction. However, the jury was given this instruction:

> If an invitee has shown an invitor's self-service merchandising and marketing methods were such as to create a reasonable probability that a dangerous condition would occur, invitor is liable for the consequences thereof and invitee need not provide notice of the specific condition created. *White v. Wynn*, 1985 OK 89, 708 P.2d 1126, 1129.

¶ 11 This non-OUJI instruction is a synopsis and rephrasing of *White, id.*, at ¶ 11, at

1129, which quotes *Lingerfelt*'s holding. The distinction between Customer's proposed instruction from *Lingerfelt* and the trial court's actual instruction from *Wynn*, quoting *Lingerfelt*, is one without a difference. The given instruction accurately reflects the law and the facts as argued by Customer: that Pilot's choice of placing a water source near diesel pumps inevitably led to a dangerous condition, thereby making Pilot liable for any foreseeable accidents arising from that condition. If the jury believed Customer's expert's opinion and Customer's theory, this instruction would have permitted them to find Pilot liable.

### 3. Assumption of Risk

¶ 12 The jury was given OUJI Instruction No. 9.14 (Assumption of the Risk).

¶ 13 That instruction states:

Plaintiff assumed the risk of injury resulting from Pilot [sic] negligence if she voluntarily exposed herself to injury with knowledge and appreciation of the danger and risk involved. To establish this defense, Pilot must show by the weight of the evidence that:

1. Plaintiff knew of the risk and appreciated the degree of danger;

2. Plaintiff had the opportunity to avoid the risk;

3. Plaintiff acted voluntarily; and

4. Plaintiff's action was the direct cause of her injury.

¶ 14 This instruction constitutes reversible error.

¶ 15 Customer testified that when she stepped out of her truck, she was aware the ground was covered by water and looked like a "slick, shiny surface." She testified: "I wasn't aware that it was diesel fuel. I just saw the slick, shiny surface." Pilot argues these statements are sufficient to support the giving of this instruction.

¶ 16 The Oklahoma Supreme Court in *Thomas v. Holliday By and Through Holliday*, 1988 OK 116, 764 P.2d 165, thoroughly discussed the proper application of the defense of assumption of the risk.

This aspect of risk assumption survives today mainly in situations where a plaintiff either expressly agrees that the defendant will be held blameless for the plaintiff's failure to exercise due care for his protection in certain circumstances, or where the defendant does not owe a duty of care to the plaintiff. In the former, the plaintiff expressly consents to relieve the defendant of an obligation of conduct to him and to take the chance of injury from a known risk arising from what the defendant is to do or leave undone. In the latter instance, the defendant would not be negligent because he owes no duty to the plaintiff....

Another aspect of risk assumption arises from Roman law and is the source of much confusion. This concept is encapsulated in the maxim *volenti non fit injuria,* which means: If one, knowing and comprehending the danger, voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have assumed the risk and is precluded from recovery for the resulting injury. The maxim is predicated upon the theory of knowledge and appreciation of the danger and voluntary assent. **A *subjective* standard is applied in evaluating a plaintiff's knowledge, comprehension and appreciation of the risk.**

**The touchstone of the assumption-of-risk defense is consent to harm and not heedlessness or indifference.** *In the context of general negligence law, it is not true that in every case where the plaintiff voluntarily encounters a known danger he necessarily consents to any future negligence of the defendant.* A pedestrian who crosses the street in the middle of a block through a stream of traffic traveling at excessive speed cannot be deemed to consent that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall. This is simply a case for application of contributory negligence. **A plaintiff may expose himself to potential harm and not consent to relieve the defendant of any future duty to act with reasonable care.** The defense of risk assumption is proper in the relational context previously mentioned but it should not be allowed as a substitute for what is in reali-

ty contributory negligence. In sum, where neither the law, status, nor contract calls for the application of some relational duty between the parties, which is distinct from that imposable by general negligence, neither *assumption of risk* nor *consent to injury* may be inferred in a negligence-based tort suit from a mere face-to-face chance encounter of one stranger with another.

. . .

What is in actuality lack of due care or heedlessness on the part of a plaintiff is often mislabeled assumption of risk. **For risk assumption to avail as a defense to a tort claim for negligence there must either be an express agreement, a pre-existing status between the defendant and plaintiff, or an element of consent to the harm that is known and appreciated by the plaintiff. Anything falling outside these areas is simply contributory negligence.**

[ ]The plaintiff may have been reckless and exhibited a lack of due care, but that would require a jury charge on contributory negligence and not on assumption of risk. The evidence clearly warranted the instruction on contributory negligence, which the trial court gave, but not one on risk assumption. Because the flawed charge gave the defendant the benefit of a complete defense to which he was not entitled, the trial court's order granting plaintiff's motion for new trial rests clearly on legally tenable grounds.

*Thomas, id.* at ¶¶ 6,–8, 10–11, at 169–171 (footnotes omitted, italics in original, emphasis added).

¶ 17 We hold the trial court erred in giving the assumption of the risk instruction "[b]ecause the flawed charge gave the defendant the benefit of a *complete defense* to which he was not entitled . . ." *Id.* at ¶ 11, at 171 (footnote omitted, emphasis in original). Clearly, Customer's testimony shows that, at the time she encountered the water on the ground, she did not know it also contained diesel fuel, and thus would be extraordinarily slippery. (She learned of this after her fall.) Her subjective knowledge of the nature of the liquid and the danger it represented was not sufficient to establish she knowingly appreciated the risk and consented to injury. We hold the trial court committed reversible error when it so instructed the jury. We reverse the judgment and remand the matter for a new trial.

## CONCLUSION

¶ 18 The trial court's September 16, 2011, Journal Entry of Judgment was erroneous as a matter of law, and is reversed. The matter is remanded to the trial court for a new trial.

¶ 19 **REVERSED AND REMANDED FOR NEW TRIAL.**

RAPP and THORNBRUGH, JJ., concur.